OMNILINGUA, INC., Appellant,

v.

GREAT GOLF RESORTS OF
WORLD, INC., Appellee.

No. 92–860.

Court of Appeals of Iowa.

March 30, 1993.

Larry J. Thorson and Douglas C. Meyer of Ackley, Kopecky & Kingery, Cedar Rapids, for appellant.

Kimberly A. Ten Eick and Lorraine Snead Ingels of Klinger, Robinson, McClusky & Ford, Cedar Rapids, for appellee.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

Plaintiff OmniLingua, Inc. (OmniLingua) appeals the district court's ruling dismissing its cause of action for lack of personal jurisdiction over defendant Great Golf Resorts of World, Inc. (Great Golf).

OmniLingua is an Iowa corporation with its principal place of business in Cedar Rapids, Iowa. OmniLingua provides foreign language translation services. Great Golf is a corporation organized under the laws of Delaware and headquartered in Bala Cynwyd, Pennsylvania. Great Golf had used OmniLingua's services on two projects in 1989 and 1990. OmniLingua's cause of action concerns payment for services performed by OmniLingua in translating Great Golf's 1991 Selection Magazine into Japanese.

Prior to January 9, 1991, two of plaintiff's representatives went to Pennsylvania and approached Great Golf's president at its office. The representatives solicited the opportunity to translate into Japanese the 1991 annual directory published by Great Golf. On January 9, 1991, OmniLingua mailed to Great Golf a letter containing a written proposal for the translation project. Great Golf later sent to OmniLingua the 1991 directory with a request for plaintiff to translate into Japanese the article on Scotland.

On March 5, 1991, OmniLingua sent a revised proposal to Great Golf's principal place of business in Pennsylvania. Following the closing of the letter, an "acceptance of firm quotation" provision was included with spaces designated for defendant's authorized signature and the date. Defendant accepted the proposal by signing and dating the acceptance provision in OmniLingua's letter dated March 5. Great Golf sent the acceptance to OmniLingua in Iowa. OmniLingua mailed a confirmation of the order to Great Golf on April 17, 1991. Subsequently, the parties engaged in written and telephone communications regarding the project.

The parties' agreement required a down payment from Great Golf before OmniLingua would begin. Great Golf allegedly forwarded a $2,000 deposit to OmniLingua, which was received by July 29, 1991. OmniLingua shipped the translated manuscript from Cedar Rapids to Pennsylvania on August 5, 1991. Great Golf refused to accept delivery. In a letter dated August 6, 1991, Great Golf terminated the contract because plaintiff failed to complete the project in time for a deadline to defendant's customer. OmniLingua billed Great Golf for work completed minus the $2,000 deposit.

OmniLingua commenced a breach of contract and quantum meruit action for the defendant's refusal to comply with the agreement. Great Golf filed a motion to dismiss claiming it did not have sufficient minimum contacts with Iowa to justify the district court exercising personal jurisdiction over it. OmniLingua resisted the motion.

On April 27, 1992, the district court entered an order sustaining the motion to dismiss. The court determined Great Golf lacked sufficient minimum contacts for the court to exercise personal jurisdiction.

On May 22, 1992, OmniLingua filed a notice of appeal.

■ Our scope of review in examining a ruling on a motion to dismiss for lack of personal jurisdiction is the district court's " 'findings of fact have the effect of a jury verdict and are subject to challenge only if not supported by substantial evidence in the record; we are not bound, however, by the trial court's application of legal principles or its conclusions of law.' " *Hagan v. Val–Hi, Inc.,* 484 N.W.2d 173, 175 (Iowa 1992) (quoting *Meyers v. Kallestead,* 476 N.W.2d 65, 66 (Iowa 1991), *cert. denied sub nom. Meyers v. Bette,* —— U.S. ——, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992)). The burden to sustain the requisite jurisdiction falls on plaintiff. *Robert Half, Inc. v. Citizens Bank,* 453 N.W.2d 236, 238 (Iowa App.1990) (citation omitted). Once a prima facie case has been established, however, defendant bears the burden of producing evidence to rebut it. *Id.*

■ A two-step analysis is used to determine whether a court has jurisdiction over a nonresident defendant. We must determine: (1) whether a statute authorizes assumption of jurisdiction over a defendant, and (2) whether the nonresident defendant has the requisite minimum contacts with Iowa such that the exercise of jurisdiction meets the requirements of due process. *Martin v. Ju–Li Corp.,* 332 N.W.2d 871, 874 (Iowa 1983) (citing *Larsen v. Scholl,* 296 N.W.2d 785, 787 (Iowa 1980)).

■ Iowa Code section 617.3 (1991) provides the statutory authority necessary to satisfy the first part of the two-part test. Section 617.3 authorizes personal jurisdiction over a nonresident who has entered into a contract "to be performed in whole or in part by either party in Iowa." Iowa Code § 617.3 (1991). Plaintiff has met his burden with respect to the requirement by alleging the parties' contract was performed in whole or in part in Iowa.

■ Great Golf's motion to dismiss challenged whether sufficient contacts existed to satisfy due process requirements. The second part of the test has five subsections. Our courts use this five-part test in determining whether sufficient contacts exist to support the exercise of jurisdiction over a nonresident defendant. This five-part test is set forth in *Larsen v. Scholl:*

  (1) the quantity of the contacts;

  (2) the nature and quality of the contacts;

  (3) the source and connection of the cause of action with those contacts;

  (4) the interest of the forum state; and

  (5) the convenience of the parties.

*Larsen,* 296 N.W.2d at 788 (citations omitted). The first three factors are the most important. *Meyers,* 476 N.W.2d at 67.

■ The "constitutional touchstone" in determining jurisdiction is whether defendant has purposefully established minimum contacts in a forum state, and defendant's conduct and connection is such defendant should have reasonably anticipated being haled into court in a forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 566, 62 L.Ed.2d 490, 501 (1980); *Bankers Trust Co. v. Fidata Trust Co.,* 452 N.W.2d 411, 413 (Iowa 1990); *Robert Half, Inc.,* 453 N.W.2d at 238 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985)). Unilateral activity on behalf of one who claims a relationship with a nonresident defendant does not satisfy the requirement of contact with a forum state. *Robert Half, Inc.,* 453 N.W.2d at 238. It is essential there must be some act by which a defendant purposefully avails itself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of its laws. *Hager v. Doubletree,* 440 N.W.2d 603, 607 (Iowa), *cert. denied,* 493 U.S. 934, 110 S.Ct. 325, 107 L.Ed.2d 315 (1989) (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1298 (1958)). We apply these principles and five-part test to the facts of this case.

■ **I.** *Quantity of Contacts.* Great Golf's contacts with Iowa have been very limited. Great Golf does not own property in Iowa. The corporation does not maintain an office, bank accounts, or a registered agent in Iowa. Defendant, however,

may not avoid our court's jurisdiction merely because its employees did not physically enter Iowa. *Hager*, 440 N.W.2d at 607. Great Golf used OmniLingua's services on two previous occasions, once in 1989 and again in 1990. On these two occasions, Great Golf sent OmniLingua translated copies of their 1989 and 1990 directories solely to review for accuracy. OmniLingua was only providing proofreading services to Great Golf because the directories had been translated and typeset in Japan. The only other contact Great Golf had with Iowa was its distribution of golf directories to two private country golf clubs located in the state. These incidents do not constitute substantial contacts.

With regard to the transaction involved in this case, Great Golf's contacts were limited to mail and telephone. These contacts arose only after OmniLingua solicited Great Golf's business. The contacts did not create an ongoing contractual relationship between the parties.

■ **II.** *Quality of Contacts.* In analyzing the quality of Great Golf's contacts with Iowa, we must consider the parties' agreement and circumstances surrounding the agreement. A plaintiff's contract with a nonresident party alone does not automatically establish sufficient minimum contacts in plaintiff's forum state. *Mountaire Feeds, Inc. v. Agro Impex*, 677 F.2d 651, 655 (8th Cir.1982); *Robert Half, Inc.*, 453 N.W.2d at 238–39 (citing *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185, 85 L.Ed.2d at 544–45). Where jurisdiction is alleged on the basis of contract, we must analyze prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing. *Hager*, 440 N.W.2d at 607 (citing *Burger King Corp.*, 471 U.S. at 479, 105 S.Ct. at 2185, 85 L.Ed.2d at 545). Great Golf did not have personnel supervise OmniLingua's performance in Iowa. The only evidence Great Golf may have retained some control over the project is shown by a letter which refers to incorporation of defendant's changes into the product. This letter was written by OmniLingua and provided Great Golf's reviewer could mark any changes on the manuscript sent to Great Golf. There is no showing Great Golf attempted to or made any changes to the manuscript. The parties' contract did not require performance in Iowa. In a letter dated March 5, 1991, OmniLingua stated if Great Golf had any questions about the firm quotation to contact the corporation at its phone number in Chicago, Illinois. Plaintiff states, however, in an affidavit all work on this project was performed in Iowa.

■ An Iowa seller of goods generally cannot subject a foreign buyer to suit in an Iowa court. *Davenport Mach. & Foundry Co. v. Adolph Coors Co.*, 314 N.W.2d 432, 433 (Iowa 1982) (citing *Rath Packing Co. v. Intercontinental Meat Traders, Inc.*, 181 N.W.2d 184, 189 (Iowa 1970)). The Iowa Supreme Court has recognized a distinction between "active" and "passive" purchasers. *Al–Jon, Inc. v. Garden Street Iron & Metal*, 301 N.W.2d 709, 714 (Iowa 1981); *see Robert Half, Inc.*, 453 N.W.2d at 239. An active purchaser "aggressively solicits a business transaction and participates in some way in the production of the subject goods". *Al–Jon, Inc.*, 301 N.W.2d at 714. A passive purchaser "simply places an order and sits by until the goods are delivered." *Id.* "A passive purchaser is less likely to be found to have availed itself purposely of the privilege of doing business in the forum state." *Id.* In this case, evidence shows OmniLingua employees went to Pennsylvania and solicited Great Golf's business. Great Golf then acted in response to OmniLingua's solicitation. Great Golf accepted OmniLingua's quotation in Pennsylvania. Delivery of the translated materials was to be in Pennsylvania. Great Golf's prior contacts with OmniLingua in 1989 and 1990 were minor contacts which involved proofreading only. All contacts between the parties occurred outside of Iowa or by interstate mail or telephone, with most contacts being initiated by OmniLingua. "[T]he use of arteries of interstate mail, telephone, railway and banking facilities is insufficient, standing alone, to satisfy due process." *Mountaire Feeds, Inc.*, 677 F.2d at 656 (citations omitted). Under these circumstances, we conclude Great Golf was a passive purchas-

er. Great Golf did not unilaterally inject itself into doing business in Iowa. Defendant's actions fail to constitute continuous and systematic activities in Iowa.

**III. *Source and Connection of the Cause of Action with Contacts in Iowa.*** This cause of action arose from the parties' agreement regarding OmniLingua's translation services. OmniLingua initiated Great Golf's contact with Iowa. The parties' affidavits show OmniLingua went to Pennsylvania to solicit business from Great Golf. In Pennsylvania, Great Golf accepted OmniLingua's offer to translate one of its publications.

**IV. *Interest of Forum State.*** Another factor to be considered in deciding if sufficient minimum contacts exist is the state's interest in this cause of action. *Larsen,* 296 N.W.2d at 790. This case is distinguishable from *Hager v. Doubletree* and *Larsen v. Scholl.* The Iowa Supreme Court found Iowa had a special interest in both causes of action. *Hager,* 440 N.W.2d at 608–09; *Larsen,* 296 N.W.2d at 790. In *Hager,* the Iowa Supreme Court determined the state had a special interest in protecting Iowa policyholders of a nonresident insurance company. *Hager,* 440 N.W.2d at 608–09. In *Larsen,* the court found Iowa had an interest in establishing the paternity of an illegitimate child born in Iowa to an Iowa resident. *Larsen,* 296 N.W.2d at 790. Iowa does not have as strong an interest in protecting citizens of this state as a result of the parties' agreement.

**V. *Convenience of the Parties.*** Convenience of the parties is a factor to be considered; however, it is not as significant as those factors addressing the quantity, quality, or nature of the contacts. Witnesses and evidence related to this cause of action are located in both Iowa and Pennsylvania. The inconvenience to either party would be notable.

OmniLingua has failed to meet its burden to show Great Golf had sufficient minimum contacts with Iowa. In the absence of such a showing, our courts will not exercise jurisdiction over a nonresident defendant. Substantial evidence supports the trial court's finding Great Golf did not have sufficient minimum contacts with the State of Iowa so as to expect to be haled into Iowa courts as a result of this transaction. The trial court properly granted Great Golf's motion to dismiss for lack of personal jurisdiction. We affirm the trial court.

**AFFIRMED.**