## FRONTIER LEASING CORPORATION

v.

### Asif SHAH, dba Lillen's Restaurant and Asif Shah, Individually, Appellants

and

### Sky Bank, Garnishee.

Superior Court of Pennsylvania.

Argued May 23, 2007.

Filed July 30, 2007.

Timothy Murray, Pittsburgh, for appellants.

James S. Larrimer, Pittsburgh, for appellee.

BEFORE: HUDOCK, TODD and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Appellants Asif Shah, both as an individual and doing business under the name of Lillen's Restaurant, appeal from the September 6, 2005, Order denying appellants' Petition for Rule to Show Cause Why Judgment Should Not Be Stricken or Opened.

¶ 2 The underlying action arose from the leasing of an ATM machine to Shah by a third-party lessor who, in turn, assigned its rights under the lease to appellee Frontier Leasing. The ATM lease term lasted for 60 months and required Shah to pay monthly rent in the amount of $249. Record, No. 7, Petition for Rule to Show Cause, Exb. A., Equipment Lease Agreement.

¶ 3 At some point, Shah allegedly defaulted on the lease. In December of 2004, appellee filed a written complaint sounding in breach of contract in the Iowa District Court for Polk County. Record, No. 7, Petition for Rule to Show Cause, Exb. A. Shah admitted to receiving notice of the commencement of the action, but it is unclear as to whether he had a clear understanding of what was occurring. N.T., 3/15/06, at 62–63; *see infra.* In any event, Shah failed to take action in response to appellee's complaint and default judgment was entered against him by the Iowa court on March 23, 2005. Record, No. 1, Affidavit of Judgment.

¶ 4 In seeking satisfaction of the judgment, appellee filed a certified copy of the default judgment and a praecipe for a writ of execution in the Allegheny County Court of Common Pleas on July 1, 2005. Record, Nos. 1–4. Appellants responded on August 23, 2005, by filing the petition requesting that the trial court strike the Iowa judgment. Record, No. 7.[1] The trial court subsequently issued the Order denying appellants' petition. Appellants then filed a timely notice of appeal with this Court and complied with the trial court's ensuing Rule 1925(b) Order. *See* Pa.

---

1. A foreign judgment duly filed in a court of common pleas is "subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of any court of common pleas of this Commonwealth...." 42 Pa.C.S.A. § 4306, **Enforcement of foreign judgments,** (b) **Filing and status of foreign judgments.**

R.A.P. 1925, **Opinion in Support of Order,** (b) **Direction to file statement of matters complained of.**

¶ 5 Appellant raises the following issue for our review:

Under the standards set forth in *Tandy Computer Leasing v. DeMarco*, 388 Pa.Super. 128, 564 A.2d 1299 (1989) and *Churchill Corp. v. Third Century, Inc.*, 496 [396] Pa.Super. 314, 578 A.2d 532 (1990), should a Pennsylvania court refuse to give Full Faith and Credit to a foreign (Iowa) judgment against an inexperienced individual where personal jurisdiction in the foreign court was improperly based upon a forum selection clause not highlighted in the lessor's form lease and for which no consideration was given?

Appellants' brief at 2.

■■■ ¶ 6 Our standard of review over a trial court's refusal to strike a judgment requires us to determine whether the trial court abused its discretion or committed an error of law. *Southern Medical Supply Company v. Myers*, 804 A.2d 1252, 1256 (Pa.Super.2002).

■■■ ¶ 7 We are obligated under the Full Faith and Credit Clause of the United States Constitution to recognize and enforce the judgments of sister states. *Id.*, citing U.S. Const. art 4, § 1. A judgment is not valid and enforceable, however, unless the sister state court that entered the judgment had personal jurisdiction over the defendant and afforded him or her due process of law. *Id.* at 1256, citing *Gersenson v. PA. Life and Health Ins. Guar. Ass'n*, 729 A.2d 1191, 1195 (Pa.Super.1999), *allocatur denied* 562 Pa. 671, 753 A.2d 818

(2000); *see also Baker by Thomas v. GMC*, 522 U.S. 222, 233, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998) ("A final judgment in one State, *if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment*, qualifies for recognition throughout the land.") (emphasis added).

¶ 8 Predictably, the crux of this dispute is centered on the question of whether the Iowa court had personal jurisdiction over Shah such that it had authority to enter the default judgment in the first instance.[2] The trial court, in concluding the Iowa court properly exercised personal jurisdiction, noted:

[I]n addition to providing that the parties agree that the lease shall be performed by lessee in Des Moines, Polk County, Iowa, the lease specifically states that "any suit on this lease shall be proper if filed in Des Moines, Polk County, Iowa." (Petition for Rule to Show Cause Why Judgment Should Not Be Stricken or Opened. Exhibit A, Paragraph 18). The effect of this language is more than an agreement that the laws of Iowa govern the lease. By agreeing that suit on the lease was proper if filed in Iowa, Petitioners consented to the jurisdiction of the Iowa court.

Trial Court Opinion, Horgos, J., 12/4/06, at 4.

¶ 9 The parties do not dispute that Shah had no physical contacts with the state of Iowa. The sole question we must answer in disposing of this appeal, therefore, is whether Shah consented to personal jurisdiction in Iowa by signing a lease contain-

---

**2.** Shah argues that while Lillen's Restaurant may have consented to jurisdiction in Iowa, he, as an individual, did not. This argument is easily disposed of because a sole proprietorship has no legal distinction from the individual who owns and operates the enterprise.

**Black's Law Dictionary** 1427 (8th ed.2004) (defining a "sole proprietorship" as "A business in which one persons owns all the assets, owes all the liabilities, and operates in his or her personal capacity.").

ing a forum selection clause providing Iowa as a "proper" forum and, if not, whether the very act of signing the lease was sufficient in of itself to establish the "minimum contacts" necessary to support an exercise of personal jurisdiction.

¶ 10 In resolving this question, we must analyze Iowa law to determine whether a court sitting in Iowa would find personal jurisdiction under the circumstances presented in this case. Indeed, the question is whether the Iowa court had the requisite personal jurisdiction, not whether a Pennsylvania court would. Our only choice, therefore, is to look to Iowa law for the answer although we are cognizant of the fact that the issue of personal jurisdiction always arises under the Due Process Clause of the United States Constitution [3] and, therefore, we are guided in our inquiry by the decisions of the United States Supreme Court. *See Tandy Computer, supra* at 1304, *citing Bartholomew Assocs., Inc. v. Townhome, Inc.,* 270 Pa.Super. 95, 410 A.2d 1266, 1268 (1979); *Stuart v. Spademan,* 772 F.2d 1185, 1189 (5th Cir.1985).

■ ¶ 11 Personal jurisdiction can be established by consent of the parties; when such consent is established, the famous "minimum contacts" framework developed by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), is inapplicable. *See e.g., Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual

right, it can, like other such rights, be waived."), *accord Burger King v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("Where a forum seeks to assert specific [personal] jurisdiction over an out-of-state defendant *who has not consented to suit there,* this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to those activities.'") (emphasis added) (internal citations omitted), *citing Keeton v. Hustler Magazine,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

¶ 12 The Iowa Supreme Court has held that when a forum selection clause governs the conduct of the parties the clause is presumptively enforceable and functions as consent to jurisdiction. *EFCO v. Norman Highway Constr.,* 606 N.W.2d 297, 299 (Iowa 2000), *citing National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 315–316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) ("[T]he Supreme Court has held, 'it is settled ... that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether.").[4]

■ ¶ 13 Under Iowa law once a plaintiff, in this case appellee, is able to establish the presumption of jurisdiction by invoking a forum selection clause, the burden shifts to the defendant to rebut the presumption. *See OmniLingua, Inc. v. Great Golf Resorts of World, Inc.,* 500

---

3. U.S. Const. amend. XIV, § 1.

4. It goes without saying that Iowa law controls the question of whether the forum selection clause under consideration is enforceable. As noted above, we are looking at whether the Iowa court had personal jurisdiction; this question is answered solely by reaching a conclusion as to the ancillary question of whether the forum selection clause is enforceable under Iowa law.

N.W.2d 721, 723 (Iowa Ct.App.1993); *see also Liberty Bank, F.S.B. v. Best Litho, Inc.*, 737 N.W.2d 312 (Iowa Ct.App.2007). The defendant, here Shah, will be able to meet his burden of rebuttal by showing that enforcing the forum selection clause would be unreasonable under the circumstances. *Liberty Bank, supra* at 315, *citing M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).[5]

¶ 14 In *Liberty Bank*, the Iowa Court of Appeals relied on the definition of unreasonable laid out by the Supreme Court for adjudicating the validity of forum selection clauses:

A forum selection clause should control absent a strong showing that it should be set aside. A choice of forum made in an arm's-length negotiation by experienced and sophisticated businessmen should be honored by the parties and enforced by the courts absent some compelling and countervailing reason. In order for the forum selection clause to be unenforceable, the [defendants] must establish that enforcement would be unreasonable and unjust or that the clause is invalid for such reasons as fraud or

overreaching. It is incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. *Liberty Bank, supra* at 315, *citing and quoting M/S Bremen, supra* at 12, 15, 18, 92 S.Ct. at 1914, 1916, 1917, 32 L.Ed.2d at 521, 523, 525 (internal citations and quotation marks omitted).

¶ 15 In order to fairly analyze the question of reasonableness we must look to the language of the forum selection clause *sub judice* and the relative sophistication of the parties. The forum selection clause at issue reads:

**Remedies:** It you are in default, we can require that you pay the remaining balance of this Lease, which is the present value of all future rents due under this lease discounted at a rate equal to discount rate of Federal Reserve Bank of Kansas City as of the date of the judgment plus 1%, and return the equipment to us. We can also use any of the remedies available to us under the Uniform Commercial Code or any other law. You agree that this Lease shall be per-

---

**5.** We recognize that pending a decision on publication, *Liberty Bank, F.S.B. v. Best Litho, Inc.*, 737 N.W.2d 312 (Iowa Ct.App.2007), does not constitute binding authority in Iowa. We were unable, however, to find another Iowa case that discusses the issue of how a defendant can overcome the presumption of consent to jurisdiction created by a forum selection clause. Consequently, *Liberty Bank* represents the clearest indication of how the Iowa courts would act if faced with the issue today.

Furthermore, a forum selection clause must give rise to a *rebuttable* presumption of consent to jurisdiction as a constitutional matter. Otherwise, anytime a forum selection clause is at issue the clause would confer personal jurisdiction irrespective of the surrounding circumstances. In our view, such a position would be untenable in light of existing United

Supreme Court precedent as sparse as it may be. *See e.g., Carnival Cruise Lines v. Shute*, 499 U.S. 585, 593, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (applying a reasonableness analysis in determining whether a forum selection clause is enforceable); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28–29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (noting that the reasonableness analysis applies to the enforceability of a forum selection clause in those instances when the issue of forum is *not* brought before the court on change of venue motion pursuant to 28 U.S.C. § 1404(a), **Change of venue**); *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) ("[Forum selection] clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.").

formed by lessee in Des Moines, Polk County, Iowa, and any suit on this Lease shall be proper if filed in Des Moines, Polk County, Iowa.

Record, No. 7, Petition for Rule to Show Cause, Exb. A.

¶ 16 Although the forum selection clause is not drafted with clarity and precision, we believe the Iowa courts would uphold the validity of the clause in certain situations—such as if the clause had been bargained for by experienced businessmen. *See Liberty Bank, supra* at 315, *citing and quoting M/S Bremen, supra* at 12, 92 S.Ct. at 1914, 32 L.Ed.2d at 521 ("A choice of forum made in an arm's-length negotiation by experienced and sophisticated businessmen should be honored by the parties and enforced by the courts absent some compelling and countervailing reason."). We do not find, however, that this case presents one of these situations.

¶ 17 The record reveals that appellant is a Pakistani immigrant who first came to the United States in 1995 with no formal training or understanding of the English language. N.T., 3/15/06, at 6. Indeed, at the time the trial court held a hearing in this matter, appellant still spoke broken English.[6] *See generally, id.* The forum selection clause under consideration says nothing of jurisdiction, service of process, or venue. *See* Record, No. 7, Petition for Rule to Show Cause, Exb. A; *see contra, EFCO, supra* at 299 (upholding the validity of a forum selection clause that read: "Any action in regard to this agreement or arising out of its terms and conditions may be instituted and litigated in the Iowa District Court for Polk County, Iowa. Customer consents to the jurisdiction of such court and agrees that service of process as provided by the statutes and rules of procedure of Iowa ... shall be sufficient."). Rather, it simply provides that any suit pertaining to the lease would be "proper" if filed in Iowa. *Id.* Notably, the forum selection clause—unlike other clauses in the master lease pertaining to material matters such as the disavowal of warranties, lease termination, assignment of the lease, and choice of law—is not emboldened. *Id.* In addition, all of the aforementioned clauses are contained within boilerplate on the second page of the lease. *Id.* Furthermore, although the *choice of law clause* in the lease is in bold and is at the very end of the boilerplate page, the forum selection clause is buried under the "Remedies" clause of the lease making it inconspicuous even to the trained eye. *Id.* Simply put, if there is anything substantive to the notion that forum selection clauses should be vitiated if unreasonable, this is the case in which to apply that notion.[7]

¶ 18 Accordingly, we conclude the forum selection clause is unenforceable under Iowa law. Our inquiry, however, must proceed as mandated by Iowa precedent. Iowa courts employ a two-part test in determining whether an assumption of jurisdiction over a non-resident defendant is appropriate. *Martin v. Ju–Li Corp.,* 332

---

6. While we recognize appellant failed to respond to the Iowa notice of summons or the entry of judgment, the question in this case in one of Constitutional dimensions. Appellant's failure to respond is irrelevant in considering whether due process is satisfied as a general matter.

7. It is important to recognize that the issue in this case has nothing to do with whether appellant breached the ATM lease. The question is whether the forum selection clause is reasonable as a matter of Iowa law.

Furthermore, it is important to recognize the distinction between declaring a forum selection unenforceable as a matter of Due Process and declaring such a clause unenforceable as a matter of state contract law. Our conclusion is that the clause is unenforceable as a matter of Due Process.

N.W.2d 871, 874 (Iowa 1983), *citing Larsen v. Scholl,* 296 N.W.2d 785, 787 (Iowa 1980). The first question Iowa courts ask is whether a statute authorizes an assumption that jurisdiction lies over the defendant. *Id.* In this case, the Iowa long-arm statute explicitly authorizes a presumption of jurisdiction "if a nonresident person makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa." *Ju–Li Corp.* at 874, *citing* Iowa Code § 617.3, **Foreign corporations or nonresidents contracting or committing torts in Iowa.** The assumption of personal jurisdiction prong of the two-part test, therefore, is clearly satisfied in this matter.[8]

■ ¶ 19 The second prong of the test requires Iowa courts to analyze a series of factors to determine whether the interactions between a defendant and Iowa are sufficient to establish the requisite minimum contacts required by the Due Process Clause. The factors are: 1) the quantity of contacts; 2) the nature and quality thereof; 3) the source of and connection with the cause of action and the contacts; 4) Iowa's interest; and, 5) the convenience of the parties. *OmniLingua, Inc. v. Great Golf Resorts of World, Inc.,* 500 N.W.2d 721, 723 (Iowa Ct.App.1993), *citing Ju–Li Corp., supra* at 874; *Larsen, supra* at 788; *see also, Burger King, supra* at 471–472, 105 S.Ct. 2174 ("The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations."), *citing Int'l Shoe Co., supra* at 319, 66 S.Ct. 154 (internal quotation marks omitted). In applying this test, Iowa courts give primary consideration to the first three factors. *OmniLingua, supra* at 723, citing *Meyers v. Kallestead,* 476 N.W.2d 65, 67 (Iowa 1991), *certiorari denied* 503 U.S. 920, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992).

¶ 20 Turning to the first factor applied by Iowa courts, appellant had a single tangential contact with Iowa—namely, he executed a contract that provided that the lessor would render performance in Iowa.[9]

---

8. The ATM lease, as noted above, provides: "this Lease shall be performed by lessee in Des Moines, Polk County, Iowa...." Record, No. 7, Petition for Rule to Show Cause Why Judgment Should Not Be Stricken or Opened, Exb. A.

We have no doubt that appellant had no idea what the import of this clause was, assuming he actually even could have read it, before signing the ATM lease. *See* N.T., 3/15/06, at 53. The Iowa long-arm statute and the case law construing it, however, do not admit of exceptions—once it is determined that "a nonresident person [made] a contract with a resident of Iowa *to be performed in whole or in part by either party in Iowa*" the presumption of personal jurisdiction arises.

9. This clause is puzzling because we cannot discern what performance original lessor could have possibly rendered in Iowa. The ATM machine was located in Pittsburgh and, presumably, any necessary maintenance for the machine would be rendered here—it is difficult to imagine appellant having to ship the machine every time it required routine maintenance. In addition, the mere receipt of payment in Iowa is not an aspect of the performance called for under the lease.

The only thing we can discern from the record is that appellant somehow was responsible for maintaining the cash flow in the machine. Appellant adamantly testified that the original lessor, who later assigned the lease to appellee, agreed to forward payments in the neighborhood of $500 per month provided appellant continued to pay the rent due under the lease. N.T., 3/15/06, at 9–10. He testified that he received a number of these payments but, when the payments ceased, he assumed that the lease had come to an end and, consequently, he ceased making rental payments. *Id.* at 16, 24–26.

The face of the lease states the lease term, the monthly rental payments due, and then contains a "Total" fee in the amount of $583.86, which is comprised of an "Adv. Pymt. Amt." and "Doc. Fee." Record, No. 7, Petition for Rule to Show Cause, Exb. A.

*See Burger King, supra* at 475 n. 18, 105 S.Ct. 2174 (stating that a single act by a defendant can give rise to the minimum contact needed to support personal jurisdiction provided the contract creates a "substantial connection" with the forum), *citing McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The nature and quality of this contact, however, was accidental; it is doubtful appellant had an understanding that this "contact" could result in him being hailed to Iowa to answer for the default. *See Burger King, supra* at 474–475, 105 S.Ct. 2174 ("The application of [the minimum contacts] rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant *purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.") (emphasis added), *citing Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). We recognize, however, that this single fortuitous contact is the sole basis of the connection between Iowa and the underlying cause of action.

¶ 21 Turning to the two subservient factors of the Iowa minimum contacts test, Iowa's interest in the underlying litigation is *de minimis*. While we have no doubt Iowa has a general interest in protecting creditors situated in Iowa that purchase debt on the secondary market, appellee can seek to recoup any default owed under the ATM lease in the Allegheny County Court of Common Pleas.[10] *See* Pa.R.C.P. 1006(a)(1), **Venue. Change of Venue** (providing that venue is proper in any county where the defendant can be served, where the cause of action arose, or where a transaction took place from which the cause of action arose). The Allegheny County Court of Common Pleas is more then capable of disposing of this routine dispute fairly and judiciously and, therefore, while Iowa does have a general interest in protecting appellee, it has little to no interest in seeing this protection rendered specifically by an Iowa court. Finally, appellee already has demonstrated that it is convenient for it to bring this action in Allegheny County. Inasmuch as this is so, it is difficult to see how it would be burdensome for appellee, who has obtained counsel here, to allow the Court of Common Pleas to adjudicate this dispute. Conversely, it would be inconvenient for appellant to travel to another state with which he is unfamiliar and to seek counsel there.

¶ 22 We conclude, therefore, that under our reading of Iowa law, as guided by United States Supreme Court precedent, the forum selection clause is not only unenforceable but also is insufficient, in of itself, to confer jurisdiction on the Iowa courts under the Due Process Clause of

When appellee's counsel questioned appellant on the payment invoices for the ATM rental payments, there was absolutely no indication appellant had ever tendered a check to appellee in the amount of $583.86 and appellee does not contend that he ever did. *See* N.T., 3/15/06, at 67. This eliminates any possibility that the $583.86 figure listed on the face of the lease called for an "Adv. Pymt. Amt." from appellant. Appellant's story, therefore, may have some validity.

10. Our review of the record indicates that the amount in controversy is somewhere in the neighborhood of $12,000 to $13,000 depending on how interest is calculated at this point. Record, No. 1, Praecipe to Enter Judgment. Accordingly, federal diversity jurisdiction would not lie and appellee's only choice of venue would be in the Allegheny County Court of Common Pleas. *See* 28 U.S.C. § 1332(a), **Diversity of citizenship; amount in controversy; costs** (requiring an amount in controversy over $75,000 for federal diversity jurisdiction to lie).

the Fourteenth Amendment. In the end analysis, we simply have not been persuaded that appellant was afforded a "fair warning" that he could be forced to travel to Iowa to answer for an alleged default of the ATM lease. *Burger King, supra* at 472, 105 S.Ct. 2174 ("By requiring that individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign, the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.") (internal and external citations and quotation marks omitted).

¶ 23 Order reversed; judgment stricken.

¶ 24 Jurisdiction relinquished.

¶ 25 Concurring Statement by TODD, J.

CONCURRING STATEMENT BY TODD, J.:

¶ 1 I agree with the Majority's analysis and conclusion that the forum selection clause at issue was an inadequate expression of consent by Appellants to the exercise of personal jurisdiction over them by the Iowa courts. I would not, however, reach the issue of whether the Iowa courts nonetheless constitutionally exerted personal jurisdiction over Appellants under the state's long-arm statute, as I find that Appellee has disavowed this alternative basis for jurisdiction. (*See* Appellee's Brief at 5 ("Appellants' argument that they have 'had no significant contact with Iowa' is irrelevant to this case because the Iowa Court's jurisdiction is based upon the forum selection clause set forth in the Lease.").) Accordingly, I concur in the result reached by the Majority.