J-A18024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF GEORGE PORUPSKI | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: JOSEPH M. PORUPSKI | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1201 WDA 2021 |

Appeal from the Decree Entered September 9, 2021
In the Court of Common Pleas of Fayette County
Orphans' Court at 541 OC 1979

BEFORE:  STABILE, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY MURRAY, J.:                     **FILED: NOVEMBER 7, 2022**

Joseph M. Porupski (Appellant) appeals from trial court's decree of distribution, awarding to participant Margaret Gunnoe (Gunnoe) a one-quarter (1/4) interest in the Estate of George Porupski (Decedent), comprised of certain real property in Fayette County, Pennsylvania.  After careful review, we affirm.

In a prior appeal, this Court summarized the case history as follows:

> The pleadings and notes of testimony to the January 14, 2021, hearing indicate the following.  … [Decedent] died testate in 1979.  He owned 61 acres of real property in Nicholson Township, Fayette County, which included a residence. Decedent's will devised a life estate in the residence to his daughter, [Gunnoe], subject to her upkeep of the house and payment of taxes and insurance.  Decedent further bequeathed the rest and residue of his Estate in equal shares to his four children: [Gunnoe]; Joseph R. Porupski[, the Estate's executor and Appellant's father] (Executor) … ; and two additional children. Appellant, who was 57 years old in 2021, is Decedent's grandson and Executor's son.  Appellant is also [Gunnoe's] nephew.

In 1992, the house was destroyed by a fire. Subsequently, [Gunnoe] lived in a mobile home, and then a modular home, on the property. Appellant alleged that in 1994, [Gunnoe] agreed to relinquish her one-fourth interest in the residual estate, in exchange for Executor purchasing the $36,022.50 modular home for her. N.T., 1/14/21, at 35, 39. [Gunnoe], however, denied that she ever waived her interest. *Id.* at 18.

The other two siblings transferred their one-fourth interests in the Estate to Executor in 1983[1] and 1993.[2] Appellant alleged that until 2006, Executor solely paid the real estate taxes, insurance, and maintenance costs for the property. N.T. at 32-33. Executor eventually borrowed money from his son — Appellant — to pay these expenditures. *Id.* at 40. **In 2006, Executor, acting in his individual capacity and as Executor, transferred the deed to the property to Appellant, as satisfaction of the loan.**[3] *Id.* at 40, 57. Appellant testified that in 2006, Executor informed [Gunnoe] of this transfer. *Id.* at 41. [Gunnoe], on the other hand, testified that she did not learn about the transfer until 2018, when she consulted an attorney about transferring her share of the estate to her sons. *Id.* at 18.

Appellant also averred that since 2006, he has solely paid the insurance, real estate taxes, and maintenance costs for the property. N.T. at 30, 33, 44. Meanwhile, [Gunnoe] testified her modular home was assessed separately from the land, and she has paid the taxes on the home since 1994. *Id.* at 48-49.

---

[1] The 1983 Deed from Frank Porupski to Joseph Porupski states consideration for the conveyance in the amount of one dollar ($1.00). Record Book (BK) 1324 page 762. However, the Deed later states: "The true and actual consideration for this conveyance is $4,000. BK 1324, page 763.

[2] The 1994 Deed from George Porupski, Jr., to Joseph Porupski states consideration for the conveyance in the amount of seven thousand, six hundred fifty dollars ($7,650.00). BK 1178, page 97. No additional statement of consideration is included in the deed.

[3] This conveyance was made by means of a "Corrective Deed" from Joseph Porupski, Executor, to Joseph Porupski (Appellant), for consideration of one dollar ($1.00). BK 3002, page 1238. No additional statement of consideration is included in the deed.

> **Executor died in 2010, without having filed any accounting of the Estate.** The two other siblings are also deceased.
>
> On February 12, 2019, [Gunnoe] filed the underlying counseled motion to appoint a substitute administrator for the Estate. Appellant filed an answer. On May 22, 2019, the orphans' court appointed Simon John, Esquire (Administrator). On January 14, 2021, the court heard oral argument on various issues, as well as testimony from Appellant, [Gunnoe], and [Gunnoe's] daughter-in-law. The court did not enter any rulings on the record at this time. *See* N.T. at 77-78.
>
> On February 5, 2021, the orphans' court issued an order, which, *inter alia*: (1) stated [Gunnoe] "did not execute a valid release to her interest in the [E]state;" (2) rejected Appellant's claim of laches because [Gunnoe's] interest in the residual estate "vested as of the date of death;" and (3) directed the parties to provide Administrator with any information necessary to file an inventory of the Estate. Order, 2/5/21, at 1-2. This order did not include any discussion of the court's conclusions.
>
> On August 10, 2021, Administrator filed a first accounting of the Estate, listing only one asset, the real property. The accounting did not include any expenses. Administrator also filed a proposed distribution, recommending that: (1) Appellant receive a three-fourths interest in the property and [Gunnoe] receive a one-fourth interest; (2) Appellant transfer a one-fourth interest in the property to [Gunnoe]; and (3) [Gunnoe] was liable to the residuary heirs for real estate taxes paid from Decedent's death to the fire that destroyed the house.

*In Re: Estate of Porupski*, 2022 Pa. Super. Unpub. LEXIS 697, at *1-5 (Pa. Super. Mar. 18, 2022) (emphasis and footnotes added).

In addition to the first accounting, the Administrator filed a proposed decree of distribution. On August 15, 2021, Appellant filed exceptions to the first accounting and proposed decree of distribution. On September 9, 2021, the trial court entered its decree of distribution. Appellant filed both a notice

- 3 -

of appeal and motion for reconsideration on October 7, 2021. Thereafter, Appellant filed a court ordered Pa.R.A.P. 1925(b) concise statement. The orphans' court filed a statement in lieu of opinion on November 3, 2021.

On March 18, 2022, this Court remanded the case for the orphans' court to file an opinion addressing Appellant's issues. *In Re: Estate of Porupski*, 2022 Pa. Super. Unpub. LEXIS 697, at *6. The orphans' court filed its opinion on March 28, 2022. The matter is now before us for review.

Appellant presents five issues for our review:

1. Whether the [orphans'] court had subject matter jurisdiction and did the [orphans'] court err in awarding an interest in real estate when the executor transferred the real estate for valuable consideration?

2. Whether the [orphans'] court erred when it did not rule on the issue that [Gunnoe] was guilty of laches?

3. Did the [orphans'] court err when it failed to conduct a hearing on the exceptions filed to the proposed decree?

4. Did the [orphans'] court err in failing to address [the] unjust enrichment of [Gunnoe]?

5. Whether the [orphans'] court erred in directing [] Appellant to pay fiduciary fees in an estate that Appellant was not an heir, legatee or devisee?

Appellant's Brief at 6 (unnecessary capitalization omitted; number designations added).

When we review an orphans' court decree, we employ a deferential standard of review, and "determine whether the record is free from legal error and the court's factual findings are supported by the evidence." *In re*

*Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016) (*en banc*) (citation omitted). Because the orphans' court sits as the factfinder, we will not reverse credibility determinations absent an abuse of discretion. *Id.* "However, we are not constrained to give the same deference to any resulting legal conclusions." *Id.* (citation omitted).

In his first issue, Appellant purports to challenge the subject matter jurisdiction of the orphans' court. *See* Appellant's Brief at 14; *see also* Pa.R.A.P. 1925(b) Statement of Errors, 10/20/21, at ¶ 1 (challenging jurisdiction of the court). In the argument section of his brief, Appellant defines "jurisdiction" but offers no argument supporting his claim that the orphans' court lacked subject matter jurisdiction. Instead, Appellant argues the Executor had the authority to sell real estate that was not specifically devised by the Decedent. Appellant's Brief at 16. Appellant asserts: "The issue now before this Court is whether the Lower Court can invalidate a deed made in 2006 by the Executor of an Estate when valuable consideration has been made." Appellant's Brief at 15.

Appellant claims that although Decedent devised his residuary estate, including the real estate, to his four children, "[D]ecedent did not specifically devise his farm to any of his heirs." *Id.* at 17. Appellant maintains the Executor sold the real estate to satisfy an "outstanding debt for paying real estate taxes, insurance and maintenance." *Id.* at 21. Appellant asserts that Gunnoe "has not paid anything towards these items for over forty years after

the decedent passed on." *Id.* According to Appellant, Executor had the authority to sell the real estate to pay the costs for administration and maintenance of the real estate. *Id.* at 21.

Thus, while Appellant baldly challenges the orphans' court's subject matter jurisdiction, he fails to develop a supporting argument. He instead argues the propriety of the Executor's actions. "The Pennsylvania Rules of Appellate Procedure require that each question an appellant raises be supported by discussion and analysis of pertinent authority, and failure to do so constitutes waiver of the claim." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1262 (Pa. Super. 2014). *See* Pa.R.A.P. 2119(a)-(b). Because Appellant failed to develop his issue regarding jurisdiction, it is waived.[4] *Buterbaugh*, 91 A.3d at 1262.

In his second issue, Appellant argues the orphans' court erred "when it did not rule on the issue that [Gunnoe] was guilty of laches[.]" Appellant's Brief at 22. Appellant states,

> [Gunnoe] waited from September 2006 until February [] 2019 to assert a claim of ownership of a one-fourth interest after the real estate had been transferred for an outstanding debt for payment of real estate taxes, insurance and maintenance.

---

[4] Appellant offers no legal authority to support a claim that the orphans' court lacks subject matter jurisdiction over the administration of a will where the former executor failed to administer the estate. *See* 20 Pa.C.S.A. § 711(1) (conferring mandatory jurisdiction on the orphans' court for the "administration and distribution of real and personal property of decedents' estates").

*Id.* at 23-24. Appellant points out that the Executor died on December 16, 2010, and is not available to testify. *Id.* at 24. Further, Appellant claims Gunnoe "herself cannot remember details about what happened years ago." *Id.* Appellant emphasizes Gunnoe's 25-year delay in asserting her claim. *Id.* According to Appellant, he has expended substantial funds for the taxes and improvements on the property. *Id.* at 24-25.

This Court has summarized the principles applicable to a laches defense as follows:

> The question of whether laches applies is a question of law; thus, we are not bound by the trial court's decision on the issue.
>
> > Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay.
>
> The question of laches itself, however, is factual and is determined by examining the circumstances of each case. Laches arises when a party's position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him.
>
> > Unlike the application of the statute of limitations, exercise of the doctrine of laches does not depend on a mechanical passage of time. Indeed, the doctrine of laches may bar a suit in equity where a comparable suit at law would not be barred by an analogous statute of limitations. Moreover,
> >
> > > the party asserting laches as a defense must present evidence demonstrating prejudice from the lapse of time. Such evidence may include establishing that a witness has died or become unavailable, that substantiating records were lost or destroyed, or that

> the defendant has changed his position in anticipation that the opposing party has waived his claims.

> In the absence of prejudice to the one asserting laches, the doctrine will not be applied. In other words, prejudice to the defendant must be shown as a prerequisite to the application of laches.

*In re Estate of Moskowitz*, 115 A.3d 372, 380 (Pa. Super. 2015) (citations and quotation marks omitted).

Our review of the record reveals no error in the orphans' court's determination that laches does not apply. Laches is an equitable doctrine. *See id.* "[H]e who seeks equity must do equity." *In re Estate of Aiello*, 993 A.2d 283, 288 (Pa. Super. 2010) (citation omitted). That is, a party seeking equitable relief must come before the court with clean hands. *Id.* "A court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue." *Id.*

Instantly, the orphans' court declined to find laches to be applicable, based in part on the actions of the Executor and Appellant. The court explained:

> In [the court's] Order dated February 5th, 2021, [the court] rejected Appellant's claim of laches, because [Gunnoe's] interest in the residual estate vested as of the date of death, meaning that her one fourth (1/4) interest is secured and does not require her to institute any other action or prosecute any other claim to be valid. To even suggest [Gunnoe] failed to exercise due diligence in a case where the Executor filed no accounting, no inheritance tax, and transferred real estate from the estate to his family members who were not beneficiaries set forth in the Will, defies all notions of logic and common sense. It is the Executor's duty

to gather the assets, pay the bills, file the necessary tax returns, prepare an account and make distribution to the beneficiaries. None of that was done by this Executor. "An Executor is a fiduciary no less than is a trustee and as such primarily owes a duty of loyalty to a beneficiary of his trust." *In Re: Noonan's Estate*, 361 Pa. 26 (1949). Executors, as well as other fiduciaries, are under an obligation to make a full disclosure to beneficiaries respecting their rights and to deal with them with the utmost fairness. *Id.* at 29.

… [T]he failure of the Executor to responsibly perform his duties, as defined by our Supreme Court, is the primary cause for the delay in administering this estate. Further, we find no credible evidence that there is any prejudice to Appellant resulting from this delay, as he and/or the Executor received and have been dealing with this property as their own to the detriment of [Gunnoe]. Accordingly, Appellant has failed to establish either of the two requirements necessary to prevail on a laches claim[.]

Orphans' Court Opinion, 3/28/22, at 3-4. Upon review, we agree with the orphans' court and adopt its reasoning with regard to Appellant's second issue. *See id.*

In his third issue, Appellant challenges the orphans' court's failure to conduct a hearing on his exceptions to the proposed decree. Appellant's Brief at 25. Appellant asserts he filed substantial documentation of his expenditures for maintenance and improvements to the real estate. *Id.* Appellant challenges the Administrator's listing the real estate as an asset on the Inventory, "although [it] had been in the Appellant's name since 2006." *Id.* Appellant points out the Administrator listed no values or credit for Appellant's expenditures. *Id.* at 25-26. According to Appellant, the trial court also erred in directing Appellant to pay one-half of the fiduciary fees, without reimbursement for his expenditures. *Id.* at 26-27.

- 9 -

In his Pa.R.A.P. 1925(b) statement, Appellant preserved the following claim: "The trial court failed to hold a hearing on the Exceptions filed by [Appellant]." Pa.R.A.P. 1925(b) Statement of Errors, 10/20/21, ¶ 2. Orphans' Court Rule 8.1 specifically provides: "Except as provided in Rule 8.2, no exceptions or post-trial motions may be filed to any order or decree of the court." Pa.R.O.C.P. 8.1. Rule 8.2 allows a party to request "reconsideration" of any order, but does not require a hearing on a motion for reconsideration. Pa.R.O.C.P. 8.2. Thus, Appellant's claim based on the lack of hearing on his "Exceptions" does not warrant relief.[5]

In his fourth issue, Appellant argues the orphans' court erred by "failing to address the unjust enrichment" of Gunnoe. Appellant's Brief at 27. Appellant asserts Gunnoe was unjustly enriched by (1) the Executor's payment of real estate taxes for the entire property; (2) the Executor's purchase of a mobile home for Gunnoe; and (3) the Executor's advance of $35,022.00 for the purchase of another mobile home Gunnoe titled in the name of her sons. *Id.* at 28. According to Appellant, Gunnoe received an amount in excess of what was devised to her. *Id.* at 29.

_____

[5] Notably, the orphans' court observed Appellant "raised no specific factual dispute that would require any testimony or evidence, nor any authority which requires [the court] to conduct a hearing on the exceptions." Orphans Court Opinion, 3/28/22, at 4. For the reasons set forth in our discussion of Appellant's fourth issue, we agree.

- 10 -

To succeed on an unjust enrichment claim, a plaintiff must prove: "(1) benefits [were] conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. ***Wilson v. Parker***, 227 A.3d 343, 353 (Pa. Super. 2020) (citation omitted). "In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." ***Id.*** (citation and emphasis omitted).

"Unjust enrichment is an equitable remedy, defined as 'the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution.'" ***Commonwealth v. Golden Gate Nat'l Senior Care LLC***, 194 A.3d 1010, 1034 (Pa. 2018) (quoting ***Roethlein v. Portnoff Law Assocs., Ltd.***, 81 A.3d 816, 825 n.8 (Pa. 2013)).

The orphans' court addressed Appellant's unjust enrichment claim as follows:

> Any payments made were voluntary and we are unable to ascertain how [Gunnoe] was unjustly enriched when Appellant and/or Executor had the benefit of the use of one hundred percent (100%) of the property for the last forty (40) years or more. The Appellant and the Executor dealt with this property as their own despite the clear language set forth in the Will, and now want reimbursement for these voluntary payments. Contrary to the assertion that [Gunnoe] would be unjustly enriched, this [c]ourt believes that the real injustice would be if [Gunnoe] was stripped of her interest in the estate. The Executor and his heir would benefit from their self-dealing activities over the last forty (40)

years and they would be unjustly enriched to the detriment of the named beneficiary in the Will of her one quarter (1/4) interest.

Orphans' Court Opinion, 3/28/22, at 4-5. Again, we agree with and adopt the reasoning of the orphans' court. *See id.*; *In re Estate of Aiello*, 993 A.2d at 288 (recognizing a party seeking equitable relief must come before the court with clean hands). *See also* 72 P.S. § 5511.12 (providing a tenant in common may pay protect his interest in the property by paying his proportionate share of the taxes owed); *Bednar v. Bednar*, 688 A.2d 1200, 1204 (Pa. Super. 1997) ("In light of section 5511.12, it becomes eviden[t] that a cotenant who assumes the tax obligations of his fellow tenant does so as a volunteer."); *Gallagher, Magner & Solomento, Inc. v. Aetna Cas. & Sur. Co.*, 252 A.2d 206, 207 (Pa. Super. 1969) (recognizing "a tenant in common who paid more than his proportionate share of the real estate taxes charged against the land held in common, is not entitled to contribution from his co-tenants in common for his excess tax payments." (citing *Lohr's Estate*, 200 A. 135 (Pa. Super.1938)).

Finally, in Appellant's fifth issue, he claims the orphans' court erred in directing him to pay fiduciary fees to the Administrator "in an estate that Appellant was not an heir, legatee or devisee." Appellant's Brief at 30 (some capitalization omitted). Appellant asserts the orphans' court had no legal basis for charging him fiduciary fees. *Id.* According to Appellant, the result, where he has paid the property's taxes and maintenance, "is unjust and inequitable." *Id.* at 32.

- 12 -

In his Rule 1925(b) statement of errors, Appellant averred the orphans' court lacked "**jurisdiction** over [him] to order him to pay any expenses involving the decedent's estate," because he "was never named in the Will of George Porupski." Pa.R.A.P. 1925(b) Statement of Errors, 10/20/21, ¶ 6 (emphasis added). We address this claim, as it is the claim Appellant preserved for review.

Unlike subject matter jurisdiction, "[p]ersonal jurisdiction can be established by consent of the parties[.]" *Frontier Leasing Corp. v. Shah*, 931 A.2d 676, 680 (Pa. Super. 2007). A "party may expressly or impliedly consent to a court's personal jurisdiction." *McCullough v. Clark*, 784 A.2d 156, 157 (Pa. Super. 2001). A defendant manifests an intent to submit to the court's jurisdiction when the defendant takes "some action (beyond merely entering a written appearance) going to the merits of the case, which evidences an intent to forego objection to the defective service." *Fleehr v. Mummert*, 857 A.2d 683, 685 (Pa. Super. 2005) (citation omitted).

Our review discloses that Appellant appeared in this case, and on March 8, 2019, filed an "Answer to Motion to Appoint Fiduciary," in which he challenged ownership of the real estate. Appellant also filed objections to the First Account and Proposed Decree of the Administrator. Objections to First Account, 8/16/21. Thus, the record reflects Appellant consented to the personal jurisdiction of the orphans' court. *See Frontier Leasing Corp.*, 931 A.2d at 680.

Additionally, it is well settled that a fiduciary, in the instant matter the Administrator, is entitled to "reasonable and just" compensation for the services he provides. *In re Estate of Sonovick*, 541 A.2d 374, 376 (Pa. Super. 1988). "[W]hen reviewing the judgment of the Orphans' Court regarding the allowance or disallowance of a fiduciary's fees and commissions, we will not interfere with the lower court's decision absent an abuse of discretion or a 'palpable error'." *Id.*

Appellant presents no support for his claim that the fees awarded to the Administrator were unreasonable, or constituted a palpable abuse of the orphans' court's discretion. Further, our review discloses no abuse of discretion by the orphans' court in awarding the fees. *See* Orphans' Court Opinion, 3/28/22, at 5-6 (discussing equities of the case and the executor's inaction over decades, and determining that division of fees between Appellant and Gunnoe was proper).

Decree affirmed.

Judge McLaughlin joins the memorandum.

Judge Stabile files a concurring/dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/2022

- 14 -