J-A27015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALPINE EQUIPMENT FUNDING, INC., A CALIFORNIA CORPORATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| U.S. SEWER AND DRAIN CAYMAN, LTD., ALSO KNOWN AS U.S. SEWER AND DRAIN CAYMAN, LLC; U.S. SEWER AND DRAIN, INC., A PENNSYLVANIA CORPORATION; JEREMEY R. BOWMAN, AN INDIVIDUAL; U.S. PIPELINING, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY; AND LISA G. BOWMAN, AN INDIVIDUAL | : | |
| | : | |
| APPEAL OF: U.S. PIPELINING, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY; AND LISA G. BOWMAN, AN INDIVIDUAL | : | No. 682 EDA 2018 |

Appeal from the Order Entered February 14, 2018
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2017-05679

BEFORE: BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.: **FILED MARCH 21, 2019**

U.S. Pipelining, LLC, and Lisa G. Bowman ("Appellants" collectively) appeal from the order denying their petition to strike a foreign judgment and stay execution. We affirm.

Alpine Equipment Funding, Inc. ("Alpine"), a California corporation with its principal place of business in California, is a lessor of large equipment. For years, Alpine leased equipment to U.S. Sewer and Drain, Inc. ("USSDI") and U.S. Sewer and Drain Cayman, LLC ("USSDC"), companies owned and

operated by Jeremy and Lisa Bowman from Pennsylvania. Prior to entering into a contract, Alpine required lessees to submit evidence of solvency and creditworthiness. Alpine allowed its lessees to take title to the leased equipment, with the lessee obtaining insurance thereon.

As part of the ongoing relationship, in 2013, Alpine entered into two contracts with USSDI and one with USSDC, all of which contained forum selection clauses providing that any litigation arising from the contracts must take place in California. Jeremy Bowman, who was president of both companies, personally guaranteed the amounts owed under the contracts. Alpine's contact for obtaining the required payments was Lisa Bowman. USSDI's address was listed in its contracts as 1100 Wood Lane, Langhorne, PA. USSDC's address was a post office box in Langhorne, PA. Electronic correspondence from the lessees to Alpine came from the domain "@ussewer.com."

In 2013, U.S. Pipelining, LLC, was formed in Pennsylvania, with Lisa Bowman as the sole owner and Jeremy Bowman as president. Alpine first became aware of the existence of U.S. Pipelining in December 2013, when Lisa Bowman identified U.S. Pipelining at 1100 Wood Lane, Langhorne, PA, as the title owner of a truck that Alpine had leased to USSDI. The equipment was also insured by U.S. Pipelining rather than by USSDI. When Alpine contacted the Bowmans to inquire about the discrepancy, Alpine was informed that it was "just a name change." Emails to Alpine began to come from the

domain "@uspiplining.com" rather than "@ussewer.com." USSDI also changed its website to one owned by U.S. Pipelining. From November 2014 until January 2016, when Alpine stopped receiving any payments on the USSDI and USSDC contracts, the payments to Alpine were made by U.S. Pipelining.

In 2016, Alpine brought suit in California against USSDI, USSDC, and Jeremy Bowman to recover under the contracts. Alpine discovered that USSDI and USSDC no longer had assets, that U.S. Pipelining was a separate legal entity from USSDI and USSDC, and that Jeremy Bowman, the guarantor of the contracts, was merely an employee, not an owner, of U.S. Pipelining. Accordingly, Alpine filed an amended complaint adding Appellants as defendants. The amended complaint averred that the defendants were alter egos of each other, with commingled assets and no separate identities. The amended complaint contained eleven counts, including claims of breach of contract, fraudulent transfer, tortious interference with contracts, conversion, and unjust enrichment against all defendants, including Appellants. None of the defendants appeared to defend the California action, resulting in the entry of a default judgment against all of them in March 2017.

On August 29, 2017, Alpine initiated the instant action in Pennsylvania by filing a praecipe to register the California judgment. Appellants filed a petition to strike the judgment, contending that the California court lacked

personal jurisdiction over them.[1]  The trial court, after issuing a rule to show cause, ultimately denied the petition.  Appellants simultaneously filed a timely notice of appeal and a concise statement of matters complained of on appeal. Appellants present one question for our review: "Whether the foreign default judgment obtained by [Alpine] is entitled to full faith and credit with respect to Appellants[.]"  Appellants' brief at 3.

We review a trial court's denial of a petition to strike a judgment for an abuse of discretion or error of law.  *Reco Equip., Inc. v. John T. Subrick Contracting, Inc.*, 780 A.2d 684, 686 (Pa.Super. 2001).  "A petition to strike is not a chance to review the merits of the allegations of a complaint.  Rather, a petition to strike is aimed at defects that affect the validity of the judgment and that entitle the petitioner, as a matter of law, to relief."  *Green Acres Rehab. & Nursing Ctr. v. Sullivan*, 113 A.3d 1261, 1267 (Pa.Super. 2015) (cleaned up).

Under the Uniform Enforcement of Foreign Judgments Act, an authenticated copy of a judgment from another state filed in a court of common pleas is treated the same as a judgment entered in a Pennsylvania court.  42 Pa.C.S. § 4306(b).

> [J]udgments entered in sister states are entitled to full faith and credit in Pennsylvania so long as there was jurisdiction by the court which originally awarded the judgment, and the defendant had an opportunity to appear and defend.  The courts in

---

[1] The petition does not challenge the jurisdiction of the California court over USSDI, USSDC, and Jeremy Bowman.

> Pennsylvania will refuse to give full faith and credit to a foreign judgment if it was obtained in derogation of a basic, due process right of the defendant. However, when the court of another state has purported to act on the merits of a case, its jurisdiction to do so and the regularity of its proceedings are presumptively valid. The party challenging the validity of the judgment, therefore, bears the burden of showing any irregularity in the proceedings.

*Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Bros. Co.*, 99 A.3d 936, 942 (Pa.Super. 2014) (cleaned up).

In determining whether the court that originally entered the judgment had personal jurisdiction over the defendants, we look to the law of that state to the extent that it is consistent with the decisions of the United States Supreme Court. *Frontier Leasing Corp. v. Shah*, 931 A.2d 676, 680 (Pa.Super. 2007); *Tandy Computer Leasing, a Div. of Tandy Elecs., Inc. v. DeMarco*, 564 A.2d 1299, 1304 (Pa.Super. 1989).

California's long-arm statute permits its courts to "exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. The Due Process Clause of the Fourteenth Amendment to the United States Constitution allows a state to exercise personal jurisdiction over a defendant if the defendant had "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

The two bases for exercising personal jurisdiction over an out-of-state defendant are general jurisdiction and specific jurisdiction. *Gilmore Bank v. AsiaTrust New Zealand Ltd.*, 223 Cal.App.4th 1558, 1568 (Cal.Ct.App. 2014).

> [A] nonresident defendant may . . . be subject to California's specific jurisdiction if a three-prong test is met. First, the defendant must have purposefully availed itself of the state's benefits. Second, the controversy must be related to or arise out of the defendant's contacts with the state. Third, considering the defendant's contacts with the state and other factors, California's exercise of jurisdiction over the defendant must comport with fair play and substantial justice.
>
> . . . Plaintiffs bear the burden of establishing that the first two requirements for specific jurisdiction have been met. If [the] plaintiffs do so, the burden shifts to [the defendant] to show that California's exercise of jurisdiction would be unreasonable.

*Id*. (citations and emphasis omitted).

Turning to the first prong of the assessment of specific jurisdiction, California courts recognize more than one test for purposeful availment; however, all are based upon the rationale "that it is fair to subject defendants to specific jurisdiction, because their forum activities should put them on notice that they will be subject to litigation in the forum." *Id*. at 1573 (internal quotation marks omitted). Which test applies "does not hinge mechanically on whether the plaintiff's claim sounds in tort or contract[,]" but is determined on a case-by-case basis upon consideration of which is "the most appropriate test for purposeful availment based on the particular facts presented." *Id*. at 1571.

One test is the "effects test," which "requires intentional conduct expressly aimed at or targeting the forum state in addition to the defendant's knowledge that his intentional conduct would cause harm in the forum." *Id*. at 1569 (emphasis and internal quotation marks omitted). The effects test considers whether the defendant's conduct was targeted at the forum, not necessarily the particular plaintiff who sued in that forum. *Id*. at 1570.

Another is the "forum benefits test," which premises exercise of jurisdiction over a defendant who "purposefully has availed himself or herself of the benefits of the forum." *Id*. at 1571. For example, the California Supreme Court found purposeful availment, and thus specific jurisdiction, was shown in a tort action through the forum benefits test where out-of-state defendants reached out to a California-based franchiser to create an ongoing business relationship. ***Vons Companies, Inc. v. Seabest Foods, Inc.***, 14 Cal. 4th 434, 449 (Cal. 1996).

Regarding the second prong, the California courts recognize that "[a] claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction." *Id*. at 452. "Rather, as long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific jurisdiction is appropriate." *Id*.

Finally, in determining whether the exercise of jurisdiction comports with fair play and substantial justice, the court "may evaluate the burden on

the defendant of appearing in the forum, the forum state's interest in adjudicating the claim, the plaintiff's interest in convenient and effective relief within the forum, judicial economy, and the shared interest of the several States in furthering fundamental substantive social policies." *Id*. at 448 (internal quotation marks and citation omitted).

In the instant case, the trial court, citing the effects test, determined that Appellants purposefully availed themselves of California's benefits, that the California lawsuit was related to Appellants' contacts with California, and that California's exercise of jurisdiction over Appellants comported with fair play and substantial justice. The trial court first noted that U.S. Pipelining, through its owner and manager Lisa Bowman, intentionally reached out to California by substituting itself into a USSDI contract with Alpine, making payments to Alpine in California, and causing Alpine to suffer a loss in California. Trial Court Opinion, 4/26/18, at 5-6. The lawsuit alleged that Appellants interfered with contracts Alpine had with the other defendants and fraudulently concealed assets to which Alpine was entitled under the contracts; hence, the California lawsuit arose out of Appellants' contacts with California. *Id*. at 6-7. In evaluating the fairness of subjecting Appellants to suit in California, the trial court noted that the burden upon them of appearing in that state weighed in favor of their position, but the rest favored California's adjudication of the dispute. *Id*. at 7-8. Specifically, California had an interest in seeing its resident Alpine achieve "convenient and effective relief," and

judicial economy was served by having the claims resolved in a single action as to all five defendants. *Id*. at 8.

Appellants contend that this Court should reverse the trial court's denial of their petition to strike for the following reasons.

(1) The trial court misstated the legal standard for deciding whether to strike or vacate a foreign judgment, incorrectly referring to its own standard as abuse of discretion and improperly introducing the "effects test" into the analysis.

(2) The trial court abused its discretion by ignoring the evidence put forth by [Appellants] attacking the basis of jurisdiction and undermining the foundation of Alpine's alter ego allegations that it added to the [a]mended [c]omplaint.

(3) The trial court also abused its discretion by finding for Alpine despite a record showing insufficient contacts between [Appellants] and California to justify that state's exercise of personal jurisdiction. The evidence is especially scant and attenuated with respect to [Lisa] Bowman.

(4) Finally, the trial court abused its discretion in finding that, assuming minimum contacts exist, California's exercise of jurisdiction over [Appellants] comports with fair play and substantial justice. Given the burden on [Appellants], the strong Pennsylvania interest in adjudicating disputes alleging alter ego liability against its citizens and corporations (and the correspondingly weak California interest in same), and the recourse available to Alpine if [Appellants'] requested relief is granted, the relevant factors in this analysis weigh strongly in [Appellants'] favor.

Appellants' brief at 8-9. We find merit in none of these arguments.

Appellants' claim of error regarding the standards applied by the trial court warrants no relief. Appellants suggest that the trial court erroneously applied an abuse-of-discretion standard in deciding whether to strike the California judgment, and that the effects test of purposeful availment applies

only to intentional torts. *Id*. at 17-18. First, as is clear from the discussion above, the trial court applied the appropriate three-prong test to determine whether California could fairly exercise specific personal jurisdiction over Appellants. Its reference to the appellate standard of review for this Court's benefit in its Rule 1925(a) opinion does not evidence any error. Second, as we have already noted, which purposeful availment test applies in any given case does not turn upon whether the claim sounds in tort or in contract. **See Gilmore Bank**, **supra** at 1571. Furthermore, many of the counts against Appellants in Alpine's amended complaint do indeed sound in tort. As such, Appellants' first argument is wholly devoid of merit.

Appellants next maintain that the trial court ignored Appellants' evidence in support of their denial of contacts with California and instead rubber-stamped the California court's exercise of jurisdiction based upon an alter ego theory. Appellants' brief at 19-22. Appellants, citing to a deposition of Alpine's vice president James Hilbert that is not included in the certified record, argued to the trial court that the alter ego allegations alleged in the amended complaint were not based upon Mr. Hilbert's personal knowledge and thus could not support jurisdiction over Appellants. Appellants' brief at 20-22 (citing, *inter alia*, Brief in Support of Praecipe for Disposition, 12/14/17, at 4-7). This argument is no more availing than Appellants' first argument.

An examination of the trial court's reasoning discussed above reveals that it was not upon an alter ego theory that it determined that jurisdiction

was properly exercised over Appellants. Rather, it was based upon Appellants' conduct, directed at Alpine in California, which caused Alpine to suffer harm in California. We find that the record supports the allegations that U.S. Pipelining converted or fraudulently concealed property belonging to Alpine, that Lisa Bowman misrepresented the significance of the changes from USSDI to U.S. Pipelining in emails and payments, and that Lisa Bowman used U.S. Pipelining to attempt to thwart Alpine's ability to recover for that harm.

Furthermore, Appellants' lack-of-personal-knowledge contentions relate to Mr. Hilbert's reliance upon information from Alpine's attorney to establish allegations such as that Lisa Bowman was the owner of U.S. Pipelining; that Jeremy Bowman, the guarantor of the leases to USSDI and USSDC, "didn't own anything anymore;" and that USSDI and U.S. Pipelining commingled assets. Those facts are supported by the record without reference to the amended complaint or Mr. Hilbert's affidavit. For example, Lisa Bowman's affidavit indicates that she is the sole member of U.S. Pipelining, that U.S. Pipelining used equipment leased by Alpine to USSDI and USSDC, and that U.S. Pipelining made payments to Alpine for equipment that belonged to the other entities. Affidavit of Lisa Bowman, 12/13/17, at 1-2. Further, Alpine produced the email of Lisa Bowman listing U.S. Pipelining as the owner of equipment Alpine had leased to USSDI. Response to Petition to Strike, 10/4/17, at Exhibit E. Additionally, Mr. Hilbert's recollection of being personally misled by the Bowmans about the use of "U.S. Pipelining" in

documents and emails being a mere name change rather than the substitution of a wholly-distinct legal entity are uncontestedly based upon his personal knowledge. As such, Appellants' second argument warrants no relief from this Court.

With their remaining issues, Appellants challenge the substance of the trial court's application of the law regarding personal jurisdiction. Appellants contend that they lacked sufficient contacts with California to support jurisdiction there, and that, even if the contacts were sufficient, California's exercise of jurisdiction does not comport with fair play and substantial justice. Appellants' brief at 24-36. Appellants point to the fact that they were not parties to the contracts with Alpine, and claim that the minor contacts relied upon by the trial court are in contrast with cases in which jurisdiction was upheld—cases that "typically involve extensive and sustained contacts far beyond what the record shows in this case." *Id*. at 25. Appellants also suggest that Pennsylvania has a greater interest than California in adjudicating the claims at issue, citing the difference in the states' laws regarding piercing the corporate veil, and noting that Alpine obtained convenient relief for its claims by obtaining a judgment against the other defendants in California. *Id*. at 34-35.

We disagree with Appellants' contentions, and find the ***Gilmore Bank*** decision apt in explaining why. In that case, Cindy Dalrymple owned a company that she sold to Jay Cho with financing from Gilmore Bank. The

company failed within six months of the sale, and Cho and Gilmore Bank ("the plaintiffs") initiated arbitration proceedings against Dalrymple. While the arbitration was pending, and it was becoming clear that Dalrymple would be held liable, Dalrymple formed a trust, appointed her niece as trustee, and transferred her considerable assets to it and other similar entities. The plaintiffs obtained an award of over $3 million, which was reduced to judgment. The plaintiffs then brought an action in California against Dalrymple, her niece, and her attorney alleging that the defendants fraudulently concealed and transferred Dalrymple's assets. The plaintiffs later amended the complaint to add a New Zealand trust company (AsiaTrust) and its parent company (Asiaciti) as defendants. *Gilmore Bank*, *supra* at 1563-64.

AsiaTrust challenged the California court's personal jurisdiction over it. It claimed that it had offices and did business only in New Zealand, and never travelled to California in connection with the trust at issue. Rather, AsiaTrust contended that Lauren Cherie Willis, who was a lawyer and the general manager of Asiaciti, was "introduced by email" to Dalrymple's niece regarding having AsiaTrust take title to an annuity that would be issued by an insurance company in Switzerland. *Id*. at 1564. AsiaTrust agreed to be trustee, and Willis drafted a deed of settlement. The draft and executed deeds were exchanged by email. Thereafter, the New Zealand trust received regular payments from the Swiss annuity and AsiaTrust wired them to Dalrymple's

California trust. Willis claimed that she never travelled to California in connection with negotiating or administering the trust.

In opposing the New Zealand defendants' attempt to avoid the jurisdiction of the California court, the plaintiffs produced evidence that Dalrymple's attorney had worked with AsiaTrust in the past, and emailed AsiaTrust to set up a trust in New Zealand "to be settled by the trustee of a California" trust. *Id*. at 1565. Willis contacted Dalrymple's niece and provided her with information about the advantages of New Zealand trusts. Willis emailed Dalrymple's lawyer and niece drafts of trust deeds. Once the trust was established, Asiaciti billed Dalrymple's niece for fees by mailing an invoice to the niece's California address, and the niece paid Asiaciti from the California trust. Dalrymple's lawyer instructed Willis to meet with the Swiss annuity company, which issued a certificate listing AsiaTrust as the owner and beneficiary of the annuity. Subsequently, AsiaTrust paid out the Swiss annuity through distributions from the New Zealand trust by wire to the California bank account of the California trust. Dalrymple's niece then distributed the funds to Dalrymple. *Id*. at 1566-67.

The trial court held that AsiaTrust was not subject to specific personal jurisdiction, the plaintiffs appealed, and the California appellate court reversed. It first held that the fact that AsiaTrust's contacts with California were not specifically directed at the plaintiffs was of no moment in applying the effects test of purposeful availment. After reviewing different purposeful

availment tests, it concluded that AsiaTrust's contacts with California satisfied several of them. In so deciding, the court highlighted the following facts: AsiaTrust had a contractual relationship with the California defendants and the plaintiffs' fraudulent conveyance claim sounded in quasi-contract; it created continuing obligations with California residents; it purposefully directed activities towards California residents and derived benefits from those California activities; it marketed its New Zealand trust products to a California resident; it negotiated with California residents and sent contracts to California to be executed by a California resident in California; it regularly disbursed funds to a California bank account; and it "received compensation for accepting, investing, managing, disbursing, and shielding the assets of [Dalrymple], a California judgment debtor, in a scheme that contemplates an ongoing contractual relationship for [Dalrymple's] lifetime." *Id*. at 1572.

The appellate court further held that, because the plaintiffs' suit was brought to reach Dalrymple's assets, and half of Dalrymple's assets were in the possession or control of AsiaTrust, there was a substantial nexus between the plaintiffs' claim and AsiaTrust's California contacts. *Id*. at 1573. Finally, the court concluded that subjecting AsiaTrust to jurisdiction in California in this case was fair and reasonable. It noted that suit in California was no more burdensome on AsiaTrust than requiring the plaintiffs to litigate in New Zealand, that California has a strong interest in enforcing its judgments, and that California and New Zealand "share an interest in enforcing judgments,

- 15 -

strengthening respect for judicial systems, and promoting cooperation among sovereign nations." *Id*. at 1575-76. Therefore, the ***Gilmore Bank*** court concluded that "[u]nder the particular circumstances of this case and taking into account modern telecommunications and transportation, . . . California's exercise of personal jurisdiction is both fair and reasonable." *Id*. at 1576.

There are many similarities between the facts of ***Gilmore Bank*** and those of the instant case; even some differences make the case for jurisdiction more compelling than in ***Gilmore Bank***. While the third party in that case had no contact with the plaintiffs from whom it was shielding money, here U.S. Pipelining, through Lisa Bowman, directly interacted with Alpine regarding the subject matter of the California lawsuit. Lisa Bowman was a member of companies which reached out to Alpine in California, and contracted with Alpine subject to a California forum selection clause, thereby establishing an ongoing relationship with a California resident. U.S. Pipelining, through Lisa Bowman, received the benefits of Alpine's California performance of its contracts with USSDI and USSDC; made regular payments to Alpine in California; intentionally deceived a California resident about the significance of the change from USSDI and USSDC to U.S. Pipelining; and shielded the assets of California judgment debtors USSDI, USSDC, and Jeremy Bowman. Accordingly, we conclude that the purposeful availment prong has been satisfied because Appellants' contacts with California should have put them on notice that they were subject to litigation there. ***Accord Vons Companies***,

*supra* 449–50 (quoting ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462, 473 (1985) ("'[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other [s]tate for the consequences of their activities.'").

Nor are we convinced that the trial court erred in its analysis of the third prong[2] of the specific jurisdiction test regarding comportment with fair play and substantial justice. The burden on Alpine to litigate in Pennsylvania would be as great as Appellants' burden to litigate in California. Moreover, the overall burden upon Appellants is far less than the burden on AsiaTrust in ***Gilmore Bank***, who was required to travel from New Zealand company to litigate in California. While Pennsylvania certainly has an interest in litigation against the assets of its residents and corporation, California has a corresponding interest in adjudicating a dispute involving money owed to its resident. California was a convenient forum for the litigation, as Alpine is a California company and Appellants' co-defendants unquestionably were subject to the jurisdiction of the California court. In short, Appellants have not met their burden of presenting "a compelling case that California's

---

[2] Appellants do not present an argument that the second prong of the test has not been satisfied, as it is clear that the California litigation bore a substantial nexus to Appellants' contacts with California.

exercise of specific jurisdiction [was] unfair and unreasonable." ***Gilmore Bank***, ***supra*** at 1576.

Appellants' final issues thus entitle them to no relief because California law supports the exercise of specific personal jurisdiction under the facts of this case. Accordingly, the trial court properly denied Appellants' petition to strike the California judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/19