J-A12031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN BROWN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GEORGE GAYDOS, AN INDIVIDUAL, | : | No. 1132 WDA 2021 |
| T/D/B/A GAYDOS CONSTRUCTION | : | |

Appeal from the Judgment Entered April 16, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  No. GD18-006991

BEFORE:   MURRAY, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: JULY 5, 2022**

Before this Court is the appeal of John Brown ("Plaintiff") from the April
16, 2021 order granting George Gaydos's ("Defendant") motion for summary
judgment and dismissing Plaintiff's action against Defendant on the grounds
that it was barred by the employer and co-employee immunity provisions of
the Workers' Compensation Act ("WCA").  **See** 77 P.S. § 72, 481(a).  We agree
with the trial court that Defendant is immune from suit as Plaintiff's co-
employee, and therefore we affirm the grant of summary judgment.

The facts underlying this matter are not in dispute.  For approximately
8 years prior to Plaintiff's workplace injury that forms the basis of this suit,
Defendant had worked in the contracting field through a sole proprietorship,

_____

[*] Retired Senior Judge assigned to the Superior Court.

Gaydos Construction. Defendant never hired employees through Gaydos Construction and therefore never obtained workers' compensation insurance. During the period when Defendant was operating his sole proprietorship, he purchased a John Deere skid loader—a piece of equipment that resembles a small bulldozer—and used the skid loader on Gaydos Construction jobs.

In April 2016, Defendant and his cousin, Mark Raymond, entered into a partnership agreement and formed American Concrete Solutions, LLC ("ACS"). In addition to Defendant and Raymond, ACS hired additional employees and maintained a workers' compensation insurance policy. While Defendant had performed various kinds of contracting work, including heating, air conditioning, and masonry through his sole proprietorship, ACS focused exclusively on concrete and paving jobs.

On September 1, 2016, Plaintiff was employed by ACS and working on an ACS paving project at a building in Pittsburgh. Defendant had brought the skid loader to the job site with the understanding that he was the only individual who was permitted to use it for the job. On the date of the incident, Defendant was at the job site first thing in the morning and then left to pay a vendor for materials. During Defendant's absence, Plaintiff attempted to enter the skid loader in order to use it for the paving project, but the arm of the skid loader activated, crushing him between the bucket and the top of the cab.

Plaintiff sustained serious injuries, and he subsequently filed a claim for workers' compensation benefits. On September 12, 2016, ACS issued a notice of temporary compensation payable, accepted Plaintiff's injuries as

compensable under the WCA, and began paying indemnity and medical benefits to Plaintiff.

Plaintiff initiated this action on May 31, 2018 by filing a complaint alleging that Defendant was negligent by improperly maintaining the skid loader and failing to supervise or train Plaintiff to use the piece of equipment.[1] On October 3, 2018, Defendant filed an answer and new matter, in which he asserted that he was immune from suit under the WCA. After discovery, the parties filed cross-motions for summary judgment. Following oral argument, the trial court initially entered an order denying both motions. Defendant moved for reconsideration, and on April 16, 2021, the trial court entered an order granting Defendant's motion for summary judgment. Plaintiff then filed the instant appeal.[2]

Appellant presents two issues for our review:

_____

[1] In the complaint, Plaintiff also named as a defendant Gaydos Construction & Asphalt Paving Co., Inc., a defunct corporation formed by Defendant's father. However, the caption was later amended to reflect that Plaintiff was suing Defendant personally and doing business as Gaydos Construction. **See infra** note 2.

[2] Plaintiff filed an initial notice of appeal on May 14, 2021. However, this Court quashed the appeal as interlocutory based upon the fact that claims remained pending against Gaydos Construction & Asphalt Paving Co., Inc. Plaintiff then moved in the trial court to amend the caption to reflect that he was suing Defendant individually and to the extent he operated his sole proprietorship, Gaydos Construction. On September 8, 2021, the trial court entered an order dismissing Gaydos Construction & Asphalt Paving Co., Inc. and amending the caption as it presently stands: "George Gaydos, an Individual, t/d/b/a Gaydos Construction." Plaintiff then filed the instant notice of appeal on September 22, 2021.

1. Whether the trial court erroneously concluded George Gaydos was immune from third-party liability claims as an employer, as set forth under the Pennsylvania Workers' Compensation Act, 77 P.S. § 481(a)?

2. Whether the trial court erroneously applied the "dual capacity" and/or "co-employee" doctrines when granting George Gaydos tort immunity under the Pennsylvania Workers' Compensation Act?

Plaintiff's Brief at 4 (unnecessary capitalization omitted).

The issue of whether the record supports the grant of summary judgment is a question of law as to which our standard of review is *de novo,* and our scope of review is plenary. *In re Risperdal Litigation*, 223 A.3d 633, 639 (Pa. 2019); *Salsberg v. Mann*, 262 A.3d 1267, 1269 (Pa. Super. 2021) (*en banc*). Accordingly, we need not defer to the determinations made by the trial court. *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) (citation omitted).

"[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Risperdal Litigation*, 223 A.3d at 639 (citation omitted). In addressing a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Salsberg*, 262 A.3d at 1269. "If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied." *Id.* (citation omitted).

In this matter, the trial court ruled that Defendant was immune from Plaintiff's common-law claims on two grounds. First, the court concluded that Plaintiff's action was barred by the employer immunity provision of the WCA, 77 P.S. § 481(a), which provides that the WCA shall be the exclusive remedy to seek compensation from an employer for workplace injuries. Trial Court Opinion, 7/13/21, at 3-5. While recognizing that ACS was required to pay Plaintiff workers' compensation benefits, the court found that Defendant, as an owner of ACS, was also an employer under the WCA because Defendant was authorized to make decisions regarding the management and operation of ACS and Defendant determined the equipment needed for ACS jobs, as well as the manner of the equipment's use. *Id.* at 3-4. The trial court further determined that the "dual capacity" exception to employer immunity is not applicable because it is nearly impossible to separate Defendant's role as Plaintiff's boss from Defendant's role as the owner of the skid loader, the piece of equipment on which Plaintiff was injured. *Id.* at 4-5.

In the alternative, the trial court concluded that Plaintiff's suit was barred pursuant to the co-employee immunity provision of the WCA, 77 P.S. § 72. Trial Court Opinion, 7/13/21, at 5-6. The trial court observed that co-employee immunity applies to managerial employees and that Defendant brought the skid loader to the job site in his role as a manager of ACS. *Id.* at 6. Moreover, there was no allegation that Defendant committed an intentional wrong, which would render co-employee immunity inapplicable. *Id.*

Plaintiff argues on appeal that the trial court erred in finding that Defendant was entitled to immunity under the WCA as Plaintiff's employer or as his co-employee. With respect to employer immunity, Plaintiff notes that he was employed by and received his paychecks from ACS, "which is a legal entity distinct and separate from" Defendant. Plaintiff's Brief at 17. Furthermore, as a partial owner of that limited liability company ("LLC"), Defendant was not personally responsible for ACS's debts and liabilities or for procuring workers' compensation insurance for ACS's employees. Therefore, as Defendant was not Plaintiff's employer, Plaintiff contends that the dual capacity doctrine is irrelevant to this action as it only stands as an exception to the general rule of employer immunity under the WCA.[3]

Rather than suing Defendant as an owner or manager of ACS, Plaintiff asserts that his claims were instead brought against Defendant in his role as

_____

[3] Plaintiff also devotes a considerable portion of his brief arguing that Defendant was not Plaintiff's employer under WCA—and thus not entitled to employer immunity—under the "statutory employer" or "borrowed worker" doctrines. Plaintiff's Brief at 22-27. The trial court did not base its grant of summary judgment on either of these doctrines. Nevertheless, we agree with Plaintiff that these doctrines are inapplicable as they would require either a general contractor-subcontractor relationship between ACS and Defendant's sole proprietorship, Gaydos Construction, in the case of the statutory employer doctrine, *see Dobransky v. EQT Production Co.*, ___ A.3d ___, 2022 PA Super 61, at *1 (Pa. Super. 2022) (*en banc*), or an employee lending relationship between ACS and Gaydos Construction in the case of the borrowed worker doctrine. *See Gardner v. MIA Products Co.*, 189 A.3d 441, 444 (Pa. Super. 2018). As discussed in more detail below, there is no evidence in the record that Gaydos Construction had any kind of formal or informal relationship with ACS on the date that Plaintiff sustained his work injuries. Rather, Defendant was at the job site on that date exclusively in his role as a manager of ACS.

the owner of the skid loader that proximately caused Plaintiff's injuries. Plaintiff maintains that the skid loader was an asset of Defendant's sole proprietorship, Gaydos Construction, and Defendant loaned the piece of equipment from Gaydos Construction to ACS for Defendant's exclusive use on the job site. According to Plaintiff, "the loaned instrumentality was essentially provided by an independent contractor that owed a duty of care to properly maintain it and to supervise its use and operation." *Id.* at 18. "Indeed, as the owner and insurer of the skid loader, Defendant was, individually, the guarantor of its safety and fitness for use—not ACS or its member/owners." *Id.*

Plaintiff further argues that the co-employee immunity provision of the WCA is inapplicable here. Plaintiff asserts that he is not suing Defendant as his ACS co-employee but rather as the owner of the skid loader and the operator of his separate sole proprietorship. Plaintiff contends that, by virtue of the fact that Defendant brought the skid loader to the ACS work site and instructed the other ACS workers that only he was permitted to use the equipment, Defendant was individually liable for harms caused by the skid loader separate and apart from his responsibilities through ACS.

As a threshold matter, we must first address the issue of whether Defendant falls within the definition of an employer under the WCA. Section 303(a) of the WCA provides that the statutory scheme provided therein is the exclusive remedy by an injured worker:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death . . .

77 P.S. § 481(a).  Thus, in exchange for workers' compensation benefits, the WCA bars the injured employee from bringing a common-law suit against her employer.  ***Grabowski v. Carelink Community Support Services, Inc.***, 230 A.3d 465, 470-71 (Pa. Super. 2020).[4]

> Our Supreme Court has explained that Section 303(a)
>
> reflects the historical quid pro quo between an employer and employee whereby the employer assumes liability without fault for a work-related injury, but is relieved of the possibility of a larger damage verdict in a common law action.  The employee benefits from the expeditious payment of compensation, but forgoes recovery of some elements of damages.

***Alston v. St. Paul Insurance Cos.***, 612 A.2d 421, 424 (Pa. 1992).

"[A] determination regarding the existence of an employer/employee relationship is a question of law that is determined on the unique facts of each case." ***Universal Am-Can, Ltd. v. Workers' Compensation Appeal Board (Minteer)***, 762 A.2d 328, 330-31 (Pa. 2000); ***see also JFC Temps, Inc. v. Workmen's Compensation Appeal Board (Lindsay)***, 680 A.2d 862, 864 (Pa. 1996).  An employer is defined as "synonymous with master," and the right to control the work of another and the manner in which the work is

---

[4] However, an employer is not immune from suit at common law if it fails to obtain workers' compensation insurance.  77 P.S. § 501(d); ***Grabowski***, 230 A.3d at 471 n.2.

performed are deemed the most relevant factors in determining whether an employer-employee relationship exists under the WCA. 77 P.S. § 21; *Universal Am-Can*, 762 A.2d at 333; *Gillingham v. Consol Energy, Inc.*, 51 A.3d 841, 855 (Pa. Super. 2012) ("A master is one who stands to another in such a relation that he not only controls the results of the work of that other, but also may direct the manner in which such work shall be done.") (citation omitted).

"[I]t is the existence of the right to control that is significant, irrespective of whether the control is actually exercised." *Universal Am-Can*, 762 A.2d at 333 (emphasis omitted). An employer-employee relationship exists under the WCA "where the alleged employer possesses the right to select the employee; the right and power to discharge the employee; the power to direct manner of performance; and the power to control the employee." *Schriver v. Workers' Compensation Appeal Board (Department of Transportation)*, 176 A.3d 459, 463 n.11 (Pa. Cmwlth. 2017).

Here, there is no dispute that Defendant held an ownership interest in ACS and had the ability to direct ACS employees, including Plaintiff, with respect to the work to be performed and the equipment that could be used for each task. However, as an LLC, ACS was a distinct legal entity and therefore Defendant was not personally responsible for ACS's legal obligations, such as

maintaining workers' compensation insurance for its employees.[5]  **See Kiehl v. Action Manufacturing Co.**, 535 A.2d 571, 574-75 (Pa. 1987) (parent corporation of subsidiary that employed injured worker was not entitled to invoke WCA employer immunity bar to worker's suit at common law where parent had intentionally formed a separate entity in order to shield itself from the subsidiary's liabilities and had distinct operational functions from the subsidiary).  Thus, Plaintiff filed his workers' compensation claim against ACS rather than Defendant, and ACS, through its insurer, began payment of workers' compensation benefits to Plaintiff.  Plaintiff's Response to Defendant's Motion for Summary Judgment, 3/3/21, Exhibits 1-2.

Moreover, Defendant was not the exclusive owner of ACS and instead he ran the company with his business partner, Raymond.  As Defendant recognized, Raymond also had authority to act on behalf of ACS and he was responsible for ACS staffing decisions.  Plaintiff's Motion for Summary Judgment, 3/3/21, Exhibit 2 at 51.  Indeed, Raymond hired Plaintiff directly

---

[5] Defendant argues that he was in fact legally responsible for ensuring that ACS maintained workers' compensation insurance, observing that corporate officers have been criminally charged based upon the corporation's failure to obtain insurance.  **See** Defendant's Brief at 13; **see also** 77 P.S. § 501(b) (providing that "[a]ny employer who fails to" obtain workers' compensation insurance shall be guilty of third-degree misdemeanor or third-degree felony); **Commonwealth v. Corban Corp.**, 957 A.2d 274, 275 (Pa. 2008) (corporate officer and corporation both criminally charged for corporation's failure to maintain workers' compensation insurance).  However, even to the extent he could be charged for not procuring workers' compensation insurance, this does not alter the fact that the primary responsibility for holding the policy rests with ACS, not Defendant.

without Defendant's participation on the date Plaintiff sustained his injury, September 1, 2016. ***Id.*** Furthermore, the partnership agreement entered into upon formation of the LLC provided that Defendant did not have the exclusive authority to run the ACS business, but rather financial and management decisions required the unanimous approval of both ACS principals. ***Id.***, Exhibit 4 ¶¶14, 21. Similarly, the profits and losses for the business were required by the partnership agreement to be split equally between Defendant and Raymond. ***Id.*** ¶15.

In light of the fact that Defendant did not directly employ Plaintiff and he did not exert exclusive control over ACS, we conclude that there at least remains a genuine issue of material fact as to whether Defendant was Plaintiff's "master" under the WCA. 77 P.S. § 21. Therefore, the trial court erred by granting summary judgment in favor of Defendant on the basis of the employer immunity set forth in Section 303(a) of the WCA, 77 P.S. § 481(a). ***Cf. Lutjens v. Bayer***, No. 3165 EDA 2018, 2019 WL 4034069, at *6 (Pa. Super. August 27, 2019) (unpublished memorandum) (holding that defendant, who was the sole member of LLC that employed the plaintiff, was also the employer for purposes of WCA employer immunity where defendant had exclusive authority to hire, fire, and direct the activities of the LLC's employees).[6] Furthermore, because there remains a triable issue of fact as

---

[6] Although ***Lutjens*** is an unreported decision, we cite to it for its persuasive value. ***See*** Pa.R.A.P. 126(b) (non-precedential Superior Court decisions filed after May 1, 2019 may be cited for their persuasive value).

to whether Defendant was Plaintiff's employer, we need not address whether the dual capacity exception to WCA employer immunity has any application here.

We next turn to the trial court's alternative basis for granting summary judgment in favor of Defendant: the co-employee immunity provision set forth in Section 205 of the WCA. Our Supreme Court has explained that the immunity granted by the WCA to workers to protect them from common-law suit filed by their injured co-workers is based upon the same *quid pro quo* underlying WCA employer immunity:

> [A] provision immunizing fellow employees from liability for negligent acts or omissions in the course of their employment is consistent with . . . the enactment of a comprehensive scheme of work[ers'] compensation. The employee receives economic insurance that his employment-related injuries will be compensated. He surrenders the right to sue employers or fellow employees for negligence, but he no longer need prove negligence, his own contributory negligence is no longer a bar, and he, too, can no longer be sued for negligence by a fellow employee.

*Jadosh v. Goeringer*, 275 A.2d 58, 60-61 (Pa. 1971).

> Section 205 provides as follows:

> If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, except for intentional wrong.

77 P.S. § 72. This provision "clearly provides that a co-employee is immune from liability for his negligent act resulting in injury to his fellow employee."

*Ducjai v. Dennis*, 656 A.2d 102, 104 (Pa. 1995).

- 12 -

Co-employee immunity applies only where the defendant's alleged liability is based on his conduct as a co-employee. ***Employers Mutual Casualty Co. v. Boiler Erection and Repair Co.***, 964 A.2d 381, 390 n.6 (Pa. Super. 2008); ***Bell v. Kater***, 943 A.2d 293, 297-98 (Pa. Super. 2008). "In order to establish immunity under the [WCA], the defendant is required to establish that her act or omission occurred while she was in the 'same employ' as the plaintiff, that is, in the course of her performance of duties for the employer." ***Bell***, 943 A.2d at 297-98 (emphasis omitted); ***see also Employers Mutual***, 964 A.2d at 390 n.6. In addition, the immunity is not applicable in cases where it is alleged that the co-employee acted intentionally, rather than negligently, in causing the injury. 77 P.S. § 72.

Co-employee immunity is not confined to rank-and-file workers but rather extends to the managers and executives of an employer and even individuals with an ownership interest in the employer. The term employee is defined in the WCA as "[a]ll natural persons who perform services for another for a valuable consideration," and includes, subject to exceptions not relevant here, "every executive officer of a corporation elected or appointed in accordance with the charter and by-laws of the corporation." 77 P.S. § 22. For the purposes of the definition of an employee under the WCA, "an executive officer of a for-profit corporation is an individual who has an **ownership interest** in the corporation." ***Id.*** (emphasis added).

In ***Jadosh***, our Supreme Court held that the defendant, the vice president and general manager responsible for operations at a metal ware

- 13 -

manufacturer that employed the plaintiff, could invoke co-employee immunity to avoid liability in a suit based upon a theory that the defendant had been negligent in allowing plaintiff to use a defective piece of equipment that caused the plaintiff injury. 275 A.2d at 59-60. The Supreme Court rejected the plaintiff's argument that the defendant could not claim co-employee immunity "by virtue of his superior status," noting that the text of the WCA directly permits executive officers to invoke the immunity provision. *Id.* at 60; *see also Adams v. US Air, Inc.*, 652 A.2d 329, 330 (Pa. Super. 1994) (directors of employer, an airline, were immune from suit brought by the plaintiff, an employee of the airline who claimed mental injuries, where the plaintiff could not present evidence that directors committed an intentional wrong).

Additionally, in *Vosburg v. Connolly*, 591 A.2d 1128 (Pa. Super. 1991), this Court concluded that the defendant, a co-owner of a family construction company, was a co-employee rather than an employer under the WCA. *Id.* at 1129, 1132-33; *see also B & T Trucking v. Workers' Compensation Appeal Board (Paull)*, 815 A.2d 1167, 1172 (Pa. Cmwlth. 2003) (individual with ownership interest in employer not automatically excluded from status as employee under the WCA). As the complaint asserted that the defendant intentionally struck the plaintiff during a work dispute, we ruled that the claim could proceed under the intentional wrong exception to co-employee immunity. *Vosburg*, 591 A.2d at 1133.

Upon review, we agree with the trial court that Defendant was Plaintiff's co-employee under the WCA and that Defendant was entitled to invoke the

co-employee immunity bar to Plaintiff's negligence action. Initially, there is no question that Plaintiff's "disability . . . [was] compensable under" the WCA as he was injured during the course and scope of employment with ACS on September 1, 2016 and ACS accepted his injury as compensable under the WCA. 77 P.S. § 72.

Furthermore, the evidence of record shows that Defendant was acting "in the course of her performance of duties for" ACS on September 1, 2016, the date Plaintiff sustained his injuries. ***Bell***, 943 A.2d at 298. Defendant testified during his deposition that he brought the skid loader to the site of the ACS paving project in Pittsburgh with the intention that he would personally operate the skid loader to assist in completing the ACS paving project. Plaintiff's Motion for Summary Judgment, 3/3/21, Exhibit 2 at 45; Defendant's Reply Brief in Support of Summary Judgment, 3/8/21, Exhibit E-2 at 60. Defendant was at the job site first thing in the morning on the date of Plaintiff's injury but left in order to pay a vendor for stone, returning immediately after the injury occurred. Defendant's Reply Brief in Support of Summary Judgment, 3/8/21, Exhibit E-2 at 59-60. As discussed in more detail below, there is no evidence that Defendant performed any work for or was acting on behalf of Gaydos Construction on September 1, 2016.

Additionally, Plaintiff does not allege that Defendant committed an "intentional wrong" that caused Plaintiff's injuries. 77 P.S. § 72. Rather, Plaintiff brought a negligence claim against Defendant, alleging in the complaint that Defendant breached his duty of care to Plaintiff by failing to

maintain the skid loader in proper working order and failing to properly train Plaintiff on its operation. Complaint ¶¶27-39.

Finally, Defendant is not disqualified from invoking co-employee immunity in light of his status as a manager of ACS with an ownership interest in the company. The WCA expressly provides that an "executive officer" of a company is an employee under the statute even if the executive has an ownership interest in the company. 77 P.S. § 22. Moreover, our Supreme Court and this Court have found that co-employee immunity applies to executives and directors as well as a co-owner of a construction business. *Jadosh*, 275 A.2d at 60; *Adams*, 652 A.2d at 330; *Vosburg*, 591 A.2d at 1132-33. Therefore, because Plaintiff and Defendant were both working for ACS at the time of Plaintiff's accident, Defendant was acting within the course and scope of his employment with ACS when he left the skid loader at the job site on September 1, 2016, and there is no allegation of an intentional wrong, Defendant is immune from the instant lawsuit pursuant to Section 205 of the WCA.

In arguing that the trial court improperly applied co-employee immunity in this matter, Plaintiff does not deny that Defendant was an ACS employee under the WCA. Instead, Plaintiff argues that his "complaint does not seek to impose liability upon [Defendant] as [a] co-employee or supervisor at ACS," but rather that Defendant "is liable individually, as owner/operator of a wholly independent business that loaned a negligently maintained instrumentality

and that he failed to supervise its use at the" job site. Plaintiff's Brief at 32-33.

However, Plaintiff's argument that he did not sue Defendant in his capacity as an ACS worker misconstrues the nature of the immunity provisions of the WCA. Like the employer immunity provisions of the WCA, a co-employee's immunity from an injured worker's suit at common law is based upon the identity of the defendant, not the plaintiff's theory of the defendant's liability. *See* 77 P.S. §§ 72, 481(a). No amount of creative pleading by Plaintiff can circumvent the fact that he sued Defendant for negligence based upon actions Defendant took while engaged in work for ACS, as Plaintiff's co-employee.

Furthermore, Defendant's previous work under the trade name Gaydos Construction and his use of the skid loader in this other business does not alter that Defendant was performing work exclusively on behalf of ACS on September 1, 2016, the date of Plaintiff's injury. Gaydos Construction was a sole proprietorship, which has no legal distinction from the individual who owns and operates the enterprise. *Frontier Leasing Corp. v. Shah*, 931 A.2d 676, 679 n.2 (Pa. Super. 2007). Defendant's use of Gaydos Construction as a fictitious name for his business "does not create a separate legal entity, but is merely descriptive of a person or corporation who does business under another name." *Burlington Coat Factory of Pennsylvania, LLC v. Grace Construction Management Co., LLC*, 126 A.3d 1010, 1024 (Pa. Super. 2015); *see also* 54 Pa.C.S. § 302(a) (defining "fictitious name"). Therefore,

the skid loader was Defendant's personally owned asset, not the property of Gaydos Construction, an entity with no separate legal identity. ***See also*** Plaintiff's Motion for Summary Judgment, 3/3/21, Exhibit 2 at 18 ("George Gaydos owns the skid loader, myself, me.").

Defendant explained during his deposition testimony that he undertook efforts to keep his work with Gaydos Construction separate from ACS, including by ceasing to bid on any masonry or concrete jobs with Gaydos Construction after ACS was formed. Plaintiff's Motion for Summary Judgment, 3/3/21, Exhibit 2 at 41. Defendant also denied that Gaydos Construction ever entered into any equipment lending agreements or joint venture agreements with ACS. ***Id.*** at 41-42, 48; Defendant's Reply Brief in Support of Summary Judgment, 3/8/21, Exhibit E-2 at 58-59. Rather, Defendant explained that he and Raymond had agreed in the first few months of ACS's business that they would each supply their personally owned tools and equipment as needed for ACS jobs because the company had not yet accumulated sufficient capital to purchase its own tools. Plaintiff's Motion for Summary Judgment, 3/3/21, Exhibit 2 at 43-45, 48.

While Plaintiff places great emphasis on Defendant's instruction to other ACS employees that he alone was authorized to operate the skid loader, this fact does not contradict Defendant's status as an ACS manager on September 1, 2016. In addition, although Gaydos Construction held a general commercial liability insurance policy that included coverage for the skid loader and other tools used on Gaydos Construction jobs, ***see*** Defendant's Motion for Summary

Judgment, 1/5/21, Exhibit E at 12-13; Plaintiff's Motion for Summary Judgment, 3/3/21, Exhibit 6, the existence of this policy does not show that the skid loader was being utilized on behalf of Gaydos Construction on the date of Plaintiff's injury. Indeed, as Defendant explained in his deposition, when the skid loader and other personally owned tools were used on an ACS job, they would be covered by ACS's insurance. Plaintiff's Motion for Summary Judgment, 3/3/21, Exhibit 2 at 42.

Ultimately, we find the record to be devoid of evidence showing that Gaydos Construction was involved with the course of events that gave rise to Plaintiff's injuries. The mere fact of Defendant's prior use of the skid loader in a separate construction business does not deprive him of co-employee immunity under the WCA. Accordingly, we affirm the trial court's grant of summary judgment on the basis of Defendant's co-employee immunity from Plaintiff's suit at common law.

Order affirmed.

Judge Murray joins the memorandum.

Judge McCaffery files a concurring/dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/5/2022

- 19 -